Pete VARDAS, Petitioner-Appellant,

v.

W.J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.

No. 82–1353.

United States Court of Appeals, Fifth Circuit.

Sept. 22, 1983.

---

Woody & Rosen, Clyde W. Woody (Court-appointed), Houston, Tex., for petitioner-appellant.

Charles Palmer, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before CLARK, Chief Judge, THORNBERRY and RANDALL, Circuit Judges.

THORNBERRY, Circuit Judge:

Petitioner Pete Vardas is serving a life sentence in the Texas Penitentiary for robbery by assault enhanced by a prior conviction for robbery by assault. The issues he raises in his petition were exhausted by a direct appeal from his conviction in the Texas Court of Criminal Appeals. His petition for habeas corpus under 28 U.S.C. § 2254 makes six averments of constitutional error. They were denied by the district court, and he is before this Court on timely appeal.

Vardas was originally indicted in 1966 on three counts. Count I charged the offense of robbery by assault. Count II charged the offense of robbery by firearms, a capital offense at that time. Count III charged an enhancement allegation as to the first count by virtue of a prior conviction of robbery by assault. Both principal counts arose out of the same episode.

At Vardas' first trial in 1967, the state elected to prosecute him for robbery by firearms. The court limited the state to trial on that count because it was a capital offense. The jury found him guilty and assessed punishment of imprisonment for 99 years. The conviction was reversed on appeal on the ground that Vardas had not been granted a pretrial competence hearing. *Vardas v. State,* 488 S.W.2d 467 (Tex.Cr. App.1972).

Upon retrial, the state did not undertake to try Vardas on Count II. Rather, the state prosecuted him on Count I, the non-capital offense of robbery by assault, and on Count III, enhancement for the prior conviction. He was not reindicted; the original indictments were used.

At this second trial, in 1973, Vardas was found guilty and sentenced to life imprisonment. This conviction was affirmed on appeal. *Vardas v. State,* 518 S.W.2d 826 (Tex. Cr.App.1975).[1]

---

1. As a side issue, Vardas alleges that the jury set the punishment at 33 years and that the court improperly changed it to life imprisonment. This assertion grows out of the fact that the jury should not have assessed a punishment of 33 years on Count I when it also found him guilty on the enhancement count because the punishment in that event is an automatic life sentence. The jury erroneously completed the bottom portion of the verdict form setting punishment at the term of 33 years on the robbery count. But since the finding was not inconsistent with enhancement, the court properly assessed the mandatory life sentence be-

## ISSUES SURROUNDING THE COMPETENCY HEARING AND THE DEFENSE OF INSANITY

■ 1. Vardas claims that his due process rights have been violated because Texas law, at the time his conviction was affirmed, did not provide for appellate review of his preliminary competency trial. This contention must fail. We held in *Martin v. Estelle*, 492 F.2d 1120, 1121, 1123 (5th Cir.), *cert. denied*, 419 U.S. 868, 95 S.Ct. 125, 42 L.Ed.2d 106 (1974), that there is no constitutional right to appeal the determination of competency to stand trial. We did recognize in *Martin* that due process would be violated if "appellant was in fact placed on trial at a time when he lacked competency to stand trial." 492 F.2d at 1123, *see also Van Poyck v. Wainwright*, 595 F.2d 1083 (5th Cir.1979). But Vardas does not allege that he was incompetent to stand trial. He only alleges that he had the right to appeal the state competency hearings on the basis of alleged error.

Vardas' reliance upon *Drope v. Missouri*, 420 U.S. 162, 178, 95 S.Ct. 896, 907, 43 L.Ed.2d 103 (1974), is not persuasive. In *Drope*, the Supreme Court simply held that there was sufficient evidence of incompetence to stand trial to require further inquiry. No such claim is made in this case.

■ Vardas also relies upon *Jackson v. State*, 548 S.W.2d 685, 690 (Tex.Cr.App. 1977), which established the right to review of pretrial competency hearings in appeals from final judgments. Vardas argues for the first time in this court that *Jackson* should be applied retroactively. Since he did not present this question to the district court in the habeas corpus proceeding, it is not properly before us on appeal. *Hall v. Maggio*, 697 F.2d 641, 643 (5th Cir.1983). Vardas filed his Application for Writ of Habeas Corpus on July 19, 1976. The district court did not deny the petition until April 27, 1982. Therefore, Vardas had five years between the *Jackson* decision and the decision in his case during which he could have raised the retroactivity issue. Because he did not do so, we will not consider it now.[2]

■ 2. Vardas asserts a violation of his constitutional rights because he was required to be examined by a court-appointed psychiatrist prior to trial without notice to his attorney. He urges that the lack of notice was contrary to the Texas law, Texas Crim.Pro.Code art. 46.02 (Vernon 1966), which requires that a competency hearing is to be ordered upon a motion, thus implying that notice must be given. The district court in denying habeas corpus in this case determined that the *ex parte* procedure followed here violated state procedures, but was not in violation of constitutional due process. A state court's failure to follow its own procedural rules does not of itself raise a federal constitutional question cognizable in habeas corpus. *Van Poyck v. Wainwright, supra*, 595 F.2d at 1086.

Vardas asserts that the failure to provide notice to his defense attorney violated his fifth amendment privilege against self-incrimination and his sixth amendment right to counsel. The United States Supreme Court has recently considered these matters in *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).

### a. *The Fifth Amendment Issue:*

■ In *Smith*, the Supreme Court held that the United States Constitution was violated by the state's introduction into evidence of a court-appointed psychiatrist's testimony to prove a capital defendant's future proclivities as to dangerousness. The testimony was based on information obtained by the psychiatrist from his interrogation of the defendant in custody who had neither requested the examination nor introduced psychiatric evidence on that is-

cause the jury did make a finding of guilt on Count III, the enhancement.

2. Even if Vardas had raised the retroactivity issue in the district court, that court could not have considered the question. Since there is no federal constitutional requirement of the right to review pretrial competency hearings, *Martin v. Estelle, supra*, the issue of retroactivity is purely one of state law and is not cognizable in a federal habeas corpus proceeding. 28 U.S.C. § 2254.

sue. The Court held that in such circumstances he had the right to a warning that he could remain silent and that any statement he made could be used against him. *Miranda v. Arizona,* 384 U.S. at 436, 86 S.Ct. at 1602, 16 L.Ed.2d at 694 (1966).

The facts in our case, however, differ significantly from those in *Smith.* Unlike the defendant in *Smith,* Vardas has given notice of his intention to rely on the insanity defense, and has introduced psychiatric evidence at the guilt/innocence phase of his trial supporting this claim. As we recently stated in *Battie v. Estelle,* 655 F.2d 692 (5th Cir.1981), "the introduction by the defense of psychiatric testimony constituted a waiver of the defendant's fifth amendment privilege in the same manner as would the defendant's election to testify at trial." *Id.* at 701–02 & n. 22 (citing *United States v. Cohen,* 530 F.2d 43 (5th Cir.), *cert. denied,* 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976)). The proffered reason for this rule is the "State's overwhelming difficulty in responding to the defense psychiatric testimony without its own psychiatric examination of the accused and by the need to prevent fraudulent mental defenses." 655 F.2d at 702 & n. 23. In *Cohen, supra,* we also held that the defendant did not have a constitutional right to have his attorney present *during* the psychiatric examination. 530 F.2d at 48.

The state psychiatrists in this case testified only in rebuttal to the defense psychiatrist's testimony that Vardas was insane at the time of the offense. The defense's expert witness, Dr. McCauley, a licensed and experienced psychiatrist, testified that Vardas was a schizophrenic, chronic differentiated type, exhibiting symptoms of paranoia and catatonia. He also stated that Vardas was living in a different world, that his thoughts were disassociated, rambling and confused, and that he was unable to think logically. He further testified that Vardas thought that people were out to hurt and persecute him, and concluded that Vardas was insane.

In rebuttal, the state offered the testimony of Drs. Hunter and Methner. Both doctors are experienced and qualified psychiatrists. Dr. Hunter had known Vardas "off and on since [19]57," mainly during Vardas' stays at Rusk State Hospital. Dr. Methner examined Vardas one month prior to the trial, and had occasion to examine his medical records from Rusk. Both psychiatrists opined that Vardas was not insane at the time he committed the crime. Rather, they diagnosed him as a sociopath. Upon being asked to describe the symptoms of a sociopath, Drs. Hunter and Methner answered as follows:

> DR. HUNTER: It is a character disorder that—many different names have been used to try to describe it; essentially, a person is an anti-social personality when they exhibit most of these features, but they have a conceited or egotistical attitude. They show marked impulsiveness. They have no particular conscience or their super-ego is not very good, and they have no remorse for any improper acts. They are characterized by marked untruthfulness. They manipulate others for their own gains. They are unable to learn from experience. They make the same mistake over and over again and frequently come in conflict with the law.

> \*　　\*　　\*　　\*　　\*　　\*

> DR. METHNER: It's a particular character disorder which has several characteristics of the person besides a life-style of not getting along with the society, committing various acts which are against the society, as judged by the society, some of the basic characteristics are Narcissism, which comes from the Greek mythological tale as a person who looked into a pool of water and fell in love with his own features, felicity, which means they carry out acts to gain their own goals with little concern for consequences or results. Their so-called super-ego structure or conscience is minimal, if not absent, which means they do not feel guilt in a particular way which most people judge and feel. Rationalization, they twist and change things by logic, whether right or wrong, to look right to themselves and others. Manipulation is the

ability to do that with others, and several others—but these are usually established over a long lifestyle pattern for the diagnosis of that particular disorder, for example, anti-social.

We agree with the state that in order to successfully rebut the insanity defense, it was necessary for it to advance "an alternate diagnosis of Vardas' condition and to show in the same detail as the defense had that Vardas' behavior was consistent with the alternative diagnosis made by the state's psychiatrists. To effectuate this goal, the state had to provide the jury with a description of the disorder." Our conclusion is based upon the reasoning of the Fourth Circuit in *United States v. Albright,* 388 F.2d 719 (4th Cir.1968).

> Where, as in the case at bar, the problem was whether mental capacity was lacking because of a sociopathic personality, we recognize that a complete psychiatric examination necessarily involves a discussion between physician and patient of the patient's participation, if any, in the acts charged and his past criminal conduct, if any. Adequate disclosure of the basis for medical opinion to the trier of fact would, in turn, almost invariably require disclosure of what the patient said about these matters, including any admissions which the patient may have made. In other types of cases, it may be possible for a psychiatrist to avoid these sensitive areas, in examination or in testimony, and still be able to reach a satisfactory and certain opinion. But if resort to medical opinion is to be had, and, indeed, it is to be encouraged, the law would lack common sense if it diminished the usefulness of medical opinion by erecting obstructions to its completeness and certainty. How best to accommodate a defendant's privilege against self-incrimination to meaningful medical opinion and testimony in particular cases will be met by us in the context of the facts of those cases as they arise.

*Albright,* 388 F.2d at 726 n. 9.

This case is thus distinguishable from *United States v. Leonard,* 609 F.2d 1163

(5th Cir.1980). In that case we reversed the conviction of a defendant because the state psychiatrist's testimony was not limited to the issue of insanity alone. Rather, the state used the psychiatrist's testimony for impeachment purposes. We held that statements obtained in the course of a court-ordered psychiatric examination could not be used in a proceeding on the issue of guilt, but could be used solely on the issue of insanity. 609 F.2d at 1165. Where, as here, the testimony of the state psychiatrists is offered solely in rebuttal to a defense of insanity, and is properly limited to that issue, the defendant's fifth amendment rights are not violated. We hold that under *Cohen, Battie,* and *Albright,* the psychiatric examination and the testimony concerning it did not violate Vardas' privilege against self-incrimination.

b. *The Sixth Amendment Issue:*

■ Vardas next argues that his sixth amendment right to counsel was violated by the failure of the state to provide his counsel with notice of the psychiatric examinations. Vardas contends that this failure surprised his counsel at the competency hearing and at trial, and denied him a fair trial. We reject this claim.

In *Estelle v. Smith, supra,* 101 S.Ct. at 1876–77, the Supreme Court held that the right to counsel was violated when the psychiatrist examined the defendant during a "critical stage" of the proceedings, and defense counsel was not notified in advance that the psychiatric examination would encompass the issue of defendant's future dangerousness. The rationale provided by the Court for this holding was that "respondent was denied the assistance of his attorneys in making the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed." 101 S.Ct. at 1877. Unlike Vardas, however, the defendant in *Smith* did not assert an insanity defense. When a defendant asserts such a defense, he can be compelled to submit to an examination by a psychiatrist nominated by the state. *United States v. Cohen, supra,* 530 F.2d at 47. We agree with the state that

by pursuing this defense, an accused necessarily had already made the "significant decision" regarding the psychiatric evaluation, and cannot now complain that he was denied the effective assistance of counsel prior to the examination because he was unable to consult with his attorney as to whether to submit to a psychiatric examination. Moreover, by pursuing the insanity defense, Vardas put himself on constructive notice that the state court could, and probably would, permit the state to conduct its own psychiatric evaluation. Tex.Crim.Proc. Code Ann. § 46.03(3)(a) (Vernon 1966).

Prior cases in our Circuit are not to the contrary. In *Spivey v. Zant*, 661 F.2d 464 (5th Cir.1981), *cert. denied*, 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982), we held that a defendant's sixth amendment rights were violated when he was required to submit to a psychiatric examination without prior notice to his counsel after adversary proceedings had been instituted against him. 661 F.2d at 475–76. However, the court-ordered psychiatric examination was conducted *before* the defendant raised an insanity defense. 661 F.2d at 473, 475 n. 18. Moreover, the defendant vehemently opposed his counsel's motion for a psychiatric examination, and informed the trial judge that "he would never again discuss the case with [his attorney], and that he wanted another attorney." *Id.* at 473. As noted above, however, Vardas cannot rely on *Spivey* to establish his sixth amendment claim. By pleading and pursuing the insanity defense prior to the court-ordered examination, Vardas put himself on notice that a court order authorizing the state to conduct its own psychiatric examination would issue.

In *Gholson v. Estelle*, 675 F.2d 734 (5th Cir.1982), we reversed the murder convictions of two defendants on due process, fifth amendment, and sixth amendment grounds. Neither defendant pleaded incompetency to stand trial. One defendant never entered a plea of insanity, and the other defendant withdrew his insanity plea after the trial court granted the state's motion for a psychiatric examination and appointed Dr. Grigson to examine the defendants "for the sole purpose of the issue of insanity." 675 F.2d at 736. The only question to be answered in that case was whether the defendants were competent to stand trial. *Id.* The state then employed Dr. Holbrook, a psychiatrist, to examine both defendants. Neither defense counsel nor the trial court was informed that Dr. Holbrook had examined the defendants. At the punishment phase of the trial, Dr. Holbrook testified that both defendants were sociopaths, that they exhibited no remorse for their actions, and that they "would commit criminal acts of violence in the future that would constitute a continuing threat to society." *Id.* at 737. Dr. Grigson also testified that defendant Gholson was a sociopath "at the very end of the scale in terms of severity" who, if given the chance, would commit violent criminal acts in the future. *Id.* The psychiatrists' testimony served as the basis for the jury's determination that the defendants should be sentenced to death. *Id.*

We based our holding that the defendants' due process rights were violated on the surprise tactics employed by the state at the punishment phase of the trial:

The defect is that defendants—at the punishment phase of their trials—were confronted and surprised by the doctors' testimony. Defendants' ability to question or challenge the veracity of the very testimony that served as the groundwork for their being condemned to die was inhibited, if not denied. Defense counsel were not notified that Dr. Holbrook was to examine or had examined defendants at all. In addition, defendant Gholson's attorney received no notice that Dr. Grigson was to examine his client for any purpose other than to determine his sanity. The record indicates that as a result of this lack of notice, defense counsel were thwarted in their effort to conduct a meaningful cross-examination of the doctors.

This surprise strikes at the heart of the adversary system of justice. The system is meant to eliminate surprise and to help illuminate the presentation of reliable ev-

idence necessary to the "determination that death is the appropriate punishment in a specific case." *Smith*, 602 F.2d at 703 *quoting Woodson v. North Carolina*, 428 U.S. 280 at 305, 96 S.Ct. 2978 at 2991, 49 L.Ed.2d 944.

675 F.2d at 738 (footnote omitted).

The lack of notice to the defendants at the critical stage of the proceedings against them constituted the basis for our conclusion that the state violated the defendants' sixth amendment rights. *Id.* at 742–43. Like the defendant in *Smith v. Estelle, supra,* the defendants in Gholson were not assisted by counsel in determining whether to submit to a psychiatric examination "the results of which the State of Texas [sought] to introduce as evidence in the sentencing phase of a capital trial." *Id.* (footnote omitted).

As mentioned above, however, no such claim of surprise tactics may be asserted here. By pleading and pursuing an insanity defense, Vardas put himself on notice that a psychiatric examination on the issue of insanity would take place. The state psychiatrists' testimony was introduced at the guilt/innocence phase of the trial solely to rebut Vardas' psychiatrist's testimony that Vardas was insane. Although we do not approve of a general practice by the state of neglecting to inform defense counsel of a psychiatric examination of criminal defendants, we nevertheless hold that the sixth amendment was not violated in the instant case.

■ 3. Vardas next asserts a due process violation because he was required by state law to prove his insanity by a preponderance of the evidence. But it is well established that a state may require the accused to bear the burden of proving insanity by a preponderance of the evidence, *Rivera v. Delaware,* 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976), dismissing appeal in *Rivera v. State,* 351 A.2d 561 (Del. 1976), for want of a substantial federal question. *See also Battie v. Estelle, supra,* 655 F.2d at 701 n. 21.

Vardas goes on to claim under this ground of error that the prosecution should not have been allowed to introduce evidence of a prior federal conviction, of the prior trial and conviction on the same indictment, *pro se* documents indicating appellant had been tried previously for the crime and had been convicted, and evidence that appellant had withdrawn a plea of insanity in order to appeal his first conviction, testimony by appellant's mother concerning appellant's attorneys, and testimony of the psychiatrists concerning appellant's antisocial behavior. It is the assertion by Vardas that the admission of such evidence puts him in the impossible position of having to explain some of these matters to the jury, so he was forced to offer certain unfavorable evidence such as Federal Bureau of Investigation records relating to him.

These contentions do not have stature on this appeal. The district court in considering Vardas' petition found it to be garbled and confused and invited him to file a clarifying pleading. At the same time, the district court listed the issues as it understood them and stated that it would decide the issues so listed unless Vardas chose to clarify them. Vardas did not file any clarifying pleadings. The district court listed this particular contention as relating to the burden of proof in competency hearings and decided the issue solely on that ground. The short answer is that these claims concerning the admission of evidence at the trial as it relates to this issue were not presented to the district court, and, therefore, are not subject to consideration by this court. *United States v. Ayers,* 615 F.2d 658, 660 (5th Cir.1980).

■ 4. Vardas asserts that his due process rights were violated by the established Texas procedure allowing the issue of sanity to be tried contemporaneously with the issue of guilt or innocence. His claim that he should have been granted a separate trial on the issue of insanity was foreclosed in this court in *Murphy v. Florida,* 495 F.2d 553 (5th Cir.1974), *aff'd,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). "Due process does not require a separate trial [on sanity], and the states and their courts are

free to determine whether such issues should be tried separately or together." *Id.* at 557. This contention is without merit.

## DOUBLE JEOPARDY CLAIMS

1. Vardas was tried and convicted under Count II, robbery with firearms, a capital offense. When his conviction was reversed, the state then tried him on Counts I and III, robbery by assault and the enhancement count. Vardas claims that trying him on the "abandoned" counts constituted double jeopardy. The general rule, of course, is that a prior trial does not preclude retrial when a conviction has been set aside on procedural grounds. *United States v. Houltin,* 566 F.2d 1027 (5th Cir.), *cert. denied,* 439 U.S. 826, 99 S.Ct. 97, 58 L.Ed.2d 118 (1978). Further, on almost identical facts, in *Lowery v. Estelle,* 696 F.2d 333 (5th Cir.1983), Lowery was prosecuted for robbery with firearms after his conviction for robbery by assault had been set aside. Unless a prior conviction is reversed for lack of sufficient evidence, the reversal does not bar retrial. 696 F.2d at 340–42.

2. Vardas urges also as a matter of double jeopardy or collateral estoppel that the state had no constitutional right to seek and obtain a life sentence for the offense of robbery by assault, enhanced by the prior conviction, after his conviction for robbery by firearms and a 99 year sentence were reversed on appeal. Vardas relies upon *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), which prohibits harsher punishment upon a retrial. Vardas here argues that the state retried him upon a "greater degree of the same crime out of the same transaction." Since retrial for a more serious offense in and of itself does not violate double jeopardy, *Lowery v. Estelle, supra,* 696 F.2d at 342, apparently petitioner actually is claiming prosecutorial vindictiveness. In *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Supreme Court held that the Pearce principle forbidding harsher punishment upon retrial applies to prosecutorial as well as judicial vindictiveness. *See also Hardwick v. Doolittle,* 558 F.2d 292

(5th Cir.1977), *cert. denied,* 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978).

Normally, before a second prosecution can give rise to vindictiveness, it must be founded on charges more serious than those alleged in the original prosecution. *Miracle v. Estelle,* 592 F.2d 1269 (5th Cir.1979). In Vardas' case the maximum potential punishment at the first trial, the death penalty, was obviously more severe than the maximum potential punishment at the second trial, mandatory life imprisonment. In both trials the minimum potential sentence was five years. Since the state did not retry petitioner on a more severe charge, we conclude that there is no issue of prosecutorial vindictiveness raised.

The denial of the petition for habeas corpus is AFFIRMED.