**Michael Edwin SCHNEIDER,**
**Petitioner–Appellant,**

v.

**James A. LYNAUGH, Director, Texas Department of Corrections, Respondent–Appellee.**

No. 86–1495.

United States Court of Appeals, Fifth Circuit.

Jan. 12, 1988.

M. David Bryant, Jr., Dallas, Tex. (court-appointed), for petitioner-appellant.

Paula C. Offenhauser, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before RUBIN, WILLIAMS, and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

In *Buchanan v. Kentucky*, [1] the Supreme Court held that when a criminal defendant has introduced psychological testimony concerning his mental state, he may not then invoke the privilege against self-incrimination to bar the prosecution from rebutting his evidence with statements he made during an examination by a court-appointed psychiatrist. In this case, the defendant in a state court trial for aggravated robbery offered testimony, at the sentencing phase of the trial, from drug treatment and rehabilitation counselors who opined that the defendant was capable of rehabilitation. In rebuttal, the State then called a court-appointed psychiatrist who had earlier examined the defendant at the defendant's request to determine his competency. The psychiatrist testified that he believed, based on his examination, that the defendant was a sociopath without prospect of rehabilitation. The jury sentenced the defendant to serve 75 years.

The defendant seeks habeas corpus relief, contending that *Buchanan* does not apply when a defendant has not introduced expert mental health testimony from a psychiatrist or psychologist. We find no significant difference, however, between the opinions offered by these rehabilitation counselors and expert opinions from a mental health professional, and we therefore affirm the district court judgment denying Schneider's petition.

I.

Michael Schneider was charged with two counts of aggravated robbery for the hold-up of two Dallas drugstores in February and March, 1979. In each robbery, an armed man had entered the pharmacy, pointed his gun at an employee, demanded narcotics, and then fled without taking any drugs, although the gunman in the first hold-up did steal $77. In each case, drugstore employees positively identified Schneider as the gunman.

1.  ── U.S. ──, 107 S.Ct. 2906, 97 L.Ed.2d 336   (1987).

Before trial, Schneider's court-appointed counsel moved for a psychiatric examination to determine Schneider's competency to stand trial.[2] Counsel stated that, although he did not believe Schneider was incompetent to stand trial or had been insane at the time of the offenses, he had filed the motion at Schneider's request. The court appointed Dr. James Grigson, a Dallas psychiatrist who specializes in examining persons accused of criminal offenses and in evaluating their competency and sanity. Dr. Grigson determined that Schneider was both sane and competent to stand trial.

At the guilt phase of his trial, Schneider presented no evidence but argued that the eyewitness testimony was inconsistent and insufficient to prove the elements of the offenses. The jury convicted him on both counts.

At the punishment phase, the State introduced a Texas Department of Corrections "penitentiary packet" bearing Schneider's name to prove that Schneider had a prior felony conviction, a factor that could enhance the sentence under Texas law.[3] Schneider then presented three witnesses—a drug abuse counselor, an employee in a rehabilitation program at the jail where Schneider had been held pending his trial, and a jail chaplain—all of whom testified, based on their personal observations of Schneider and his participation in rehabilitation and drug counseling programs at the jail, that Schneider had been a drug addict but sincerely wanted to overcome his habit and was capable of rehabilitation.

Schneider's first witness, Lou Detwiler, was a counselor with the Palmer Drug Abuse Program, a drug rehabilitation program similar to Alcoholics Anonymous. Detwiler described the Palmer program, for which he had worked six months, as the largest and most effective of its kind in Dallas. He testified that he had met with Schneider for an hour every week for two months and had concluded, after some initial doubts, that Schneider sincerely wanted to overcome his drug addiction and could

be cured. Among other things, Detwiler testified, Schneider had been a "real positive influence" in Detwiler's weekly class, had offered to help counsel young people against taking drugs, and wanted to keep working with Detwiler even after being sent to prison.

On cross-examination, Detwiler admitted that he had based his opinion entirely on what Schneider had told him, that he had never conducted any psychological tests on Schneider or asked detailed questions about his background, and that he was not familiar with the details of Schneider's prior criminal record. Detwiler also admitted that, although he was acquainted, from his work, with the concept of a "sociopath," he could not offer a "clear definition" of the term.

Schneider then called Andrew Tubbs, a 24–year–old employed by the Dallas County Education Rehabilitation Program to teach college-credit courses to inmates at the county jail. Tubbs, who had a B.S. degree in corrections, testified that one goal of the teaching program was to rehabilitate inmates by "preparing them to go back into society" and "sustain themselves." Schneider, he said, had enrolled in several courses, was receiving A's in all of them, and was active in class discussions. Tubbs testified that he believed Schneider was capable of rehabilitation and that previous attempts at reform had failed because Schneider's drug counselor and parole officer had not devoted sufficient effort to helping him.

On cross-examination, Tubbs also admitted that he had based his opinion entirely on what Schneider had told him and that he had learned of Schneider's drug addiction only two and a half weeks earlier. In response to the State's questioning, Tubbs described a sociopath generally as a person who was "manipulative," lacking in "social conscience," and "unable to adjust in our society today," but he added that sociopaths could be reformed "if they're willing to be helped."

---

2. *See* Tex.Code Crim.Proc.Ann. art. 46.02, § 3(a) (Vernon's 1979).

3. Tex.Penal Code § 12.42(c) (Vernon's 1974 & Supp.1987).

Finally, Schneider called Wilma Mae Sumlin, a chaplain at the county jail hired through the Turnpike Church of Christ in Grand Prairie, Texas. Sumlin, an assistant pastor at the church, had served as a chaplain for two years, and also testified that she had "somewhat of a background" in rehabilitation counseling in Ohio. Sumlin testified she believed Schneider had undergone a sincere religious conversion and was not "trying to do this just to get out." She said that other inmates had tried to "con" her and that Schneider's attitude was different because, for example, he had offered to help other inmates with their problems. On cross-examination, Sumlin described her belief in Schneider's sincerity as an "innate feeling" based on conversations and "a difference in his behavior" over several weeks, but she admitted that she knew nothing of Schneider's background.

Schneider also sought a postponement to call two other jail chaplains who were unavailable at the time, but the trial court refused this request, and Schneider rested. The State then called Dr. Grigson, over Schneider's objection. Dr. Grigson testified that his practice was primarily in "criminal legal psychiatry," evaluating whether defendants were, for example, competent, sane, or likely to make probation. In twelve years of private practice, Dr. Grigson estimated, he had examined almost 9,000 persons charged with felonies and several hundred charged with misdemeanors. Indeed, issues involving testimony by Dr. Grigson for the prosecution have come before us on several occasions.[4] His qualifications include board certification, a status he testified was held by less than half of practicing psychiatrists; four and a half years of teaching medical school full-time; and consulting work with several hospitals and state and local health departments.

Dr. Grigson described his examination of Schneider in some detail. It involved evaluation of five categories: Schneider's general physical appearance and behavior; the manner in which he spoke; facial expressions reflecting his emotional state; his ability to express thoughts, including descriptions by Schneider of his background, medical history, and activity around the time of the alleged offense, as well as indications of any hallucinations or delusions; and his orientation as to time, place, and person.

Based on this examination, especially his evaluation of Schneider's expressions of emotion, Dr. Grigson testified that Schneider had a "sociopathic personality disorder" and had no conscience, that is, he experienced no feelings of guilt or remorse from criminal behavior. Dr. Grigson added that such persons "con, manipulate, use people. They're only interested in their own self-pleasure, their own self-gratification." He stated that "[t]he average person probably would not be able to identify these individuals other than by the fact that they repeatedly break the rules."

Because of Schneider's inability to feel guilt, Dr. Grigson concluded, there was no prospect of rehabilitating him. Although some sociopaths could be reformed if treated at a very early age, the psychiatrist testified, "if you're talking about Mr. Schneider, in this particular case there is no way that any change is going to take place.... I mean[ ] to state absolutely that there is no form of rehabilitation or any type of treatment that is in any way at all going to modify or change his prior behavior; it will go ahead and continue as it has in the past. That's not a 'may,' it's absolute." Defense counsel's cross-examination of Dr. Grigson was limited primarily to eliciting that the psychiatrist had occasionally erred in his past diagnoses.

In his argument to the jury, Schneider's counsel admitted that Dr. Grigson's credentials were more impressive than those of Schneider's witnesses. He added, however,

**4.** *Jones v. McCotter,* 767 F.2d 101 (5th Cir.), *cert. denied,* 474 U.S. 947, 106 S.Ct. 345, 88 L.Ed.2d 292 (1985); *Barefoot v. Estelle,* 697 F.2d 593 (5th Cir.), *aff'd,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983); *Gholson v. Estelle,* 675 F.2d 734 (5th Cir.1982); *Smith v. Estelle,* 602 F.2d 694 (5th Cir.1979), *aff'd,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *Bruce v. Estelle,* 536 F.2d 1051 (5th Cir.1976), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977).

that the rehabilitation counselors "have on a day-to-day basis dealt with this kind of man" and that "they were used to people being incarcerated coming up to them and trying to con them and playing the con game as Ms. Sumlin said, exactly as Dr. Grigson told you." The prosecutor, in his closing statement, argued that Dr. Grigson was "the real expert" and "best [knew] what this individual is like inside," and that Schneider had initiated contact with the social workers solely to obtain favorable testimony for his approaching trial. State law allowed a sentence of 15 to 99 years or life in prison on each count;[5] the jury returned a sentence of 75 years on each. The sentences were imposed concurrently.

After exhausting direct appeals[6] and state habeas corpus proceedings, Schneider sought habeas corpus relief in federal court. He relied on *Estelle v. Smith*,[7] in which the Supreme Court held that the Fifth and Sixth Amendments barred the prosecution from using the results of a court-ordered psychiatric examination against the defendant when the defendant neither requested the examination nor introduced psychiatric testimony. On referral from the district court, the U.S. magistrate recommended denying the petition. The magistrate observed that all of Schneider's witnesses testified to his changed mental attitude and positive prospects for rehabilitation based on their personal observations of him, and he concluded that the State was entitled to rebut this evidence with testimony based on similar observations. The magistrate also rejected Schneider's claim that his right to counsel had been violated, since Schneider and his attorney had notice of the psychiatric examination and Schneider had no right to have his attorney present during the examination. Finally, the magistrate found all of Schneider's other claims for relief groundless.

The district court adopted these findings and recommendations, but also found it significant that Schneider himself had requested the examination, whereas in *Estelle v. Smith* the trial court had ordered the examination on its own motion. The district court therefore rejected all of Schneider's claims for relief.

## II.

Schneider's primary contention is that the State's use of testimony based on the psychiatric examination violated his Fifth Amendment privilege against self-incrimination because he had not been informed before the examination that he had a right to remain silent and that any statement he made could be used against him at his trial.

This contention requires us to determine which of two Supreme Court decisions governs this case. The first is *Estelle v. Smith*, in which the Court held that a capital defendant's Fifth and Sixth Amendment rights were violated when the psychiatrist (the same Dr. Grigson) testified, based on a competency examination of the defendant ordered *sua sponte* by the trial court, that he believed the defendant was a severe sociopath whose condition could not be remedied by future treatment. Smith's counsel had not requested the examination and was apparently unaware of its scope and, perhaps, even its existence; he had never put at issue Smith's competency to stand trial or his sanity nor had he ever indicated that he might do so.[8] The psychiatrist's testimony was directly relevant to the issue of future dangerousness, a factor that the State was required, under Texas law, to prove beyond a reasonable doubt in order to impose the death penalty.[9]

The Court first noted that the privilege against self-incrimination applies to capital-sentencing hearings, and that it applied to

5. Tex.Penal Code § 12.42(c).

6. *Schneider v. State*, 645 S.W.2d 463 (Tex.Crim. App.1983) (en banc).

7. 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).

8. *Id.* at 465–66, 471 n. 15, 101 S.Ct. at 1874–75, 1877 n. 15.

9. *Id.* at 466, 101 S.Ct. at 1874–75; *see* Tex.Code Crim.Proc.Ann. arts. 37.071(b), (c) (Vernon Supp.1980).

the psychiatrist's testimony because he had described Smith's statements and had not merely reported his own observations of Smith's behavior.[10] It then held that a defendant "who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence[ ] may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." [11] The State could not use Smith's statements to the psychiatrist without having warned him of his right to remain silent and the possible use of his statements, as required by *Miranda v. Arizona.*[12]

The Court wrote narrowly in *Smith*, however, laying special emphasis on the fact that the defendant had neither requested the examination nor offered psycholgical evidence and therefore had no indication that the results of the examination would emerge as crucial evidence against him.[13] The limits of *Smith* became clear last term in *Buchanan v. Kentucky.*[14] In that case, the defendant, charged with murder, requested and underwent an examination to determine whether he should be hospitalized for psychiatric treatment. At his trial, he attempted to establish a defense of "extreme emotional disturbance," relying on several reports from psychologists concerning his mental condition. In response, the State introduced the psychological report from the examination Buchanan had requested.

The Supreme Court rejected Buchanan's contention that the State's use of the psychological evaluation violated his Fifth and Sixth Amendment rights. Noting that *Smith* had been based on the "distinct circumstances" involved there, the Court held that "if a defendant requests such an evaluation or presents psychological evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested.... The introduction of such a report for this limited rebuttal purpose does not constitute a Fifth Amendment violation." [15]

The Court also expressed concern that the "entire defense strategy" had been to establish the defendant's extreme mental disturbance, and that, because the defendant had not taken the stand and the psychologists whose reports the defense introduced were not available for cross-examination, the prosecution could not effectively respond to this defense without presenting other psychological evidence.[16]

## III.

The State first contends that the exclusionary rule of *Estelle v. Smith* is inapplicable to issues, such as enhancement factors in a non-capital sentencing proceeding, on which the state does not bear the burden of proof. We need not address this broad argument, however, for even if *Smith* applies to non-capital sentencing proceedings, this case is governed by *Buchanan*, not *Smith*.

We have described the principle approved in *Buchanan* —a defendant who puts his mental state at issue with psychological evidence may not then use the Fifth Amendment to bar the state from rebutting in kind—as involving a "waiver" of Fifth Amendment rights,[17] although the Supreme Court did not use that term in *Buchanan* and although at least one Justice has strongly criticized such a charac-

---

**10.** 451 U.S. at 464–65, 101 S.Ct. at 1873–74.

**11.** *Id.* at 468, 101 S.Ct. at 1876.

**12.** 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**13.** 451 U.S. at 467, 101 S.Ct. at 1875.

**14.** —— U.S. ——, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987).

**15.** 107 S.Ct. at 2917–18.

**16.** *Id.* at 2918.

**17.** *See, e.g., Williams v. Lynaugh,* 809 F.2d 1063, 1068–69 (5th Cir.1987); *Riles v. McCotter,* 799 F.2d 947, 953–54 (5th Cir.1986); *Vardas v. Estelle,* 715 F.2d 206, 208 (5th Cir.1983), *cert. denied,* 465 U.S. 1104, 104 S.Ct. 1603, 80 L.Ed.2d 133 (1984); *see also, e.g., Pope v. United States,* 372 F.2d 710, 720 (8th Cir.1967) (Blackmun, J.), *vacated and remanded on other grounds,* 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968).

terization as "at best a fiction." [18] Whatever the label, the principle reflects the courts' attempts to maintain a "fair state-individual balance," a value underlying the Fifth Amendment privilege itself.[19] It is unfair and improper to allow a defendant to introduce favorable psychological testimony and then prevent the prosecution from resorting to the most effective and in most instances the only means of rebuttal: other psychological testimony.[20] The principle also rests on "the need to prevent fraudulent mental defenses." [21]

In this case, Schneider clearly put his mental state at issue. The defense witnesses, however, were not psychiatrists or psychologists, but social workers and counselors, and Schneider argues that, accordingly, his interest in excluding the prosecution's psychiatric testimony outweighs the State's need to present it. He points out that in *Buchanan* the Supreme Court repeatedly referred to the defendant's use of *"psychological* evidence," and he argues that such evidence, "with its inherent credibility and scientific aura," is a far cry from the opinion of a chaplain or recovering drug addict that Schneider was sincerely trying to pull his life back together.

The fact that Schneider first raised the issue on which Dr. Grigson testified—Schneider's sincerity and capacity for rehabilitation—is insufficient to overcome Schneider's privilege. As the Supreme Court recognized in *Ake v. Oklahoma,* "Testimony emanating from the depth and scope of specialized knowledge is very impressive to a jury. The same testimony from another source can have less effect." [22] Moreover, "[u]nlike lay witnesses,

who can merely describe symptoms they believe might be relevant to the defendant's mental state, ... psychiatrists can identify the 'elusive and often deceptive' symptoms of insanity, ... and tell the jury why their observations are relevant." [23]

■ If, for example, Schneider had called his family or friends to testify that he was a good fellow and could be reformed, he would not have opened the door to the use of the psychiatrist's expert testimony against him. In general, the defendant must introduce mental-status evidence that may fairly be characterized as expert testimony before the prosecution may respond with the results of a psychiatric examination.[24]

■ Schneider's witnesses, however, offered far more than simple lay or character testimony. Although they were not formally qualified as experts under Rule 702 of the Federal Rules of Evidence, their backgrounds comported with the spirit of that rule, which permits a witness to be qualified as an expert by "knowledge, skill, [or] experience" as well as "training [or] education." Rule 702 "does not rank academic training over demonstrated practical experience." [25] While constitutional values may differ from those underlying evidentiary rules, the experience of Schneider's witnesses rendered their testimony analogous to the expert psychological evidence that the defendant introduced in *Buchanan.*

Schneider presented his witnesses as possessing experience that enhanced their credibility on the central issue at the sentencing phase—Schneider's sincerity in wanting to reform. This issue was less

**18.** *United States v. Byers,* 740 F.2d 1104, 1113 (D.C.Cir.1984) (en banc) (plurality opinion of Scalia, J.).

**19.** *Murphy v. Waterfront Commission,* 378 U.S. 52, 55, 84 S.Ct. 1594, 1597, 12 L.Ed.2d 678 (1964) (citation omitted); *Byers,* 740 F.2d at 1113.

**20.** *See Buchanan,* 107 S.Ct. at 2918 (*citing Byers,* 740 F.2d at 1111–13 (Scalia, J.); *Pope,* 372 F.2d at 720 (Blackmun, J.)); *Vardas,* 715 F.2d at 209; *United States v. Cohen,* 530 F.2d 43, 47–48 (5th Cir.) *cert. denied,* 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976).

**21.** *Vardas,* 715 F.2d at 209 (citations omitted).

**22.** 470 U.S. 68, 81 n. 7, 105 S.Ct. 1087, 1096 n. 7, 84 L.Ed.2d 53 (1985).

**23.** *Id.* at 80, 105 S.Ct. at 1095–96 (citations omitted).

**24.** *See Battie v. Estelle,* 655 F.2d 692, 702 (5th Cir.1981).

**25.** *Circle J Dairy v. A.O. Smith Harvestore Products,* 790 F.2d 694, 700 (8th Cir.1986).

technical than the questions of competency or sanity to which psychological evidence typically is directed, and Schneider's counsel elicited the practical experience of each witness in dealing with drug addicts and jail inmates. In his summation, Schneider's attorney argued to the jury that the counselors "have on a day-to-day basis dealt with this kind of man," and that they "were used to people being incarcerated coming up to them and playing the con game.... They were used to that and yet they say Michael Schneider is different." Schneider's witnesses also evinced familiarity with the technical term "sociopath," later employed by Dr. Grigson, and one of them, Tubbs, offered the opinion that some sociopaths could be rehabilitated.

In addition, in this case, as in *Buchanan,* the State's only effective means of countering Schneider's defense was independent psychological testimony.[26] As in *Buchanan,* the defendant did not take the stand. Schneider's witnesses, unlike the psychologists whose reports were presented in *Buchanan,* were available for cross-examination; the value of such cross-examination, however, is limited. As then-Judge Scalia said in *United States v. Byers,* cross-examination might effectively counter expert psychological testimony only

> if psychiatry were as exact a science as physics, so that, assuming the defense psychiatrist precisely described the data (consisting of his interview with the defendant), the error of his analysis could be demonstrated. It is, however, far from that. Ordinarily the only effective rebuttal of psychiatric opinion testimony is contradictory opinion testimony.[27]

The rehabilitation counselors' experienced judgments concerning Schneider's sincerity were similarly difficult to attack on cross-examination, for rehabilitation of offenders is likewise an inexact science. Schneider suggests other means with which the State might have countered his evidence. These, however, would likewise

be available to rebut a defense psychiatrist's testimony, and therefore, *Buchanan* disposes of any claim that the prosecution must content itself with these alternatives.

Finally, Schneider requested the competency examination. Before *Buchanan,* we held that this fact "[did] not obviate the necessity for giving the *Miranda* warnings" when the examination extended beyond the subject of competency.[28] The Court in *Buchanan,* however, regarded such a request as militating against the defendant's assertion of the privilege, for it stated that "if a defendant requests such an evaluation *or* presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested." [29]

Although the Court's use of the disjunctive might even suggest that the defendant's request is sufficient by itself to constitute forfeiture of the privilege, the rest of the sentence and the opinion as a whole strongly imply that the defendant must have gone further and actually introduced psychological evidence. Schneider's request is relevant, in any case. Taking into account the request and the other factors, we reject his Fifth Amendment claim.

## IV.

■ Schneider argues that the psychiatric examination violated his Sixth Amendment right to the assistance of counsel. The Supreme Court, however, rejected the same argument in *Buchanan.* The Sixth Amendment guarantees consultation with counsel, which Schneider undoubtedly had, since he requested the examination through counsel.[30] Schneider also received advance notice of who would conduct the examination, and he received the results before trial.

Schneider contends that, although he agreed to the examination, he had no idea

---

26. *Buchanan,* 107 S.Ct. at 2918.

27. *Byers,* 740 F.2d at 1114; *see also Vardas,* 715 F.2d at 209; *Cohen,* 530 F.2d at 47–48.

28. *Battie,* 655 F.2d at 702–03.

29. *Buchanan,* 107 S.Ct. at 2917–18.

30. *See Buchanan,* 107 S.Ct. at 2918–19.

it would be used for more than the limited purpose of determining competency. Given our rejection of Schneider's Fifth Amendment claim, however, his Sixth Amendment objection may not succeed either. In *Williams v. Lynaugh*,[31] we treated both Fifth and Sixth Amendment objections as waived when the prosecution's psychiatric evidence was properly limited to rebuttal of the defendant's mental-status evidence. Nothing in *Buchanan* undercuts this treatment. Schneider cannot complain of the mere fact that the examination extended beyond the subject of competency. He can only object to the use of that broadened examination against him; and he is held, as a matter of policy if not of "knowing and intelligent" waiver,[32] to have invited that use by introducing mental-status testimony of his own. If maintenance of a "fair state-individual balance" requires this conclusion under the Fifth Amendment, Schneider may not circumvent this policy through the Sixth Amendment.

## V.

■ Schneider contends that his prior conviction for marijuana possession, which was used to enhance his punishment for aggravated robbery, was void because the indictment for possession was defective and he was sentenced for a different offense than the one to which he had pled guilty. These contentions are interrelated. Because of a change in the Texas possession statutes that occurred after Schneider committed the offense, it appears, the judgment against him specified that he was guilty of possessing more than four ounces of marijuana; the indictment, however, had not recited the quantity, because it was not necessary to do so under the old code. The magistrate and the district court correctly found that this was an error "of form rather than substance." The judgment in the possession case unequivocally reflects that Schneider pled guilty to possession of marijuana as alleged in the indictment.

Finally, Schneider contends that he was denied effective assistance of counsel at his state trial, alleging that counsel failed to raise various claims. To succeed on this ground for relief, however, Schneider must show that his counsel's failures prejudiced his case.[33] Schneider raises his counsel's failure to challenge the date of a previous conviction for robbery; the State, however, abandoned reliance on that conviction as a basis for enhancement of sentence. Schneider also claims his counsel was ineffective for failing to raise a constitutional objection to the use of psychiatric testimony and for failing to challenge or investigate the validity of the prior indictment. Schneider has suffered no prejudice, however, since his contentions on these issues do not justify relief in any event and he has received full consideration of his arguments.

For these reasons, the judgment of the district court is AFFIRMED.

---

**31.** 809 F.2d 1063, 1068 (5th Cir.1987).

**32.** *See Byers,* 740 F.2d at 1113 (Scalia, J.).

**33.** *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).