Quenton N. BROWN, Petitioner–Appellant,

v.

Robert H. BUTLER, Sr., Warden, Respondent–Appellee.

No. 88–4163.

United States Court of Appeals, Fifth Circuit.

June 28, 1989.

Rehearing Denied Aug. 3, 1989.

Jonathan Turley (court appointed), New Orleans, La., for petitioner-appellant.

Quenton N. Brown, Angola, La., pro se.

Thomas C. Senette, Asst. Dist. Atty., Bernard E. Boudreaux, Jr., Dist. Atty., New Iberia, La., for respondent-appellee.

Before THORNBERRY, WILLIAMS, and DAVIS, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant Quenton Brown petitioned the district court for habeas corpus relief in connection with his 1974 Louisiana conviction for armed robbery. Brown argued that rebuttal testimony elicited by the state from a psychiatrist who had earlier examined Brown violated his Fifth Amendment guarantee against self-incrimination. After an independent review, the district court adopted a court-appointed magistrate's recommendation that the state's use of psychiatric testimony did not violate the Fifth Amendment. We hold that the rebuttal testimony constituted a constitutional infraction but that the error was harmless under the circumstances. We therefore affirm the denial of Brown's requested relief.

## I. Background

On June 7, 1973, Quenton Brown, armed with a .38 caliber pistol, stole $117.04 and a 15 cent pie from a bread store in Morgan City, Louisiana. Brown fled on foot and hid underneath a nearby house. Two employees of the store pursued Brown while a third, the cashier, summoned the police. Brown remained underneath the house until the police arrived. He subsequently came out from under the house and was arrested while walking across an adjacent parking lot. Brown was carrying a .38 caliber weapon and a brown bag containing $117.04.

Brown pled not guilty and not guilty by reason of insanity. At the request of Brown's attorney, the state court appointed a sanity commission to determine whether Brown was competent to stand trial. Thereafter Brown was committed to East Louisiana State Hospital in Jackson for four months and ten days. Dr. Edward Mann, a forensic psychiatrist and Director of the Forensic Division of the East Louisiana State Hospital, testified at the sanity hearing that Brown was competent to stand trial and was able to assist counsel.

As Brown's counsel now readily concedes, the defense did not seriously contest at trial the allegation that Brown robbed the bread store. Rather, Brown's entire case rested on the success of his insanity defense. The defense relied on two means to illustrate Brown's mental state. First, defense counsel cross-examined the state's witnesses to determine if they had noticed anything unusual about Brown's conduct. However, none of the state's witnesses testified that Brown exhibited any behavioral quirks on the day of the robbery. Second, during its case-in-chief, the defense attempted to prove Brown's insanity through the observations of three witnesses—two jailers employed by the St. Mary Parish Sheriff's Department and the St. Mary Parish coroner. The jailers' testimony related entirely to their impressions of numerous convulsive seizures Brown suffered while in their custody. One jailer's testimony indicated that some of the convulsions may have been faked. Cross examination of the jailers made clear that neither had any specialized medical training nor were they able to tell if Brown was indeed sick in any way. Dr. Musso, the final defense witness, was accepted by the court as an expert in "medical matters." As mentioned, Dr. Musso was the coroner of the Parish of St. Mary. Dr. Musso testified that he prescribed anti-convulsive medication to Brown on several occasions. On cross-examination Dr. Musso was unable to confirm whether Brown's seizures were real or faked. In addition, Dr. Musso had never observed Brown in the midst of a convulsion, but instead based his medical formula-

tions on information given to him by the jailers.

Although defense counsel never specifically attempted to link or equate epilepsy with mental defect or disorder which, as discussed below, is one of two elements necessary to successfully assert an insanity defense under Louisiana law, the testimony relating to Brown's convulsions presumably was adduced to reflect his alleged mental disorder.

The State's rebuttal consisted entirely of the testimony of Dr. Mann, the forensic psychiatrist who examined Brown on numerous occasions pursuant to the state court's sanity commission order. Dr. Mann testified that his examinations were "entirely psychiatric." Dr. Mann further testified that Brown had told him that: (1) he had faked the seizures and (2) his counsel had persuaded him to fake the seizures. Dr. Mann concluded that it was his opinion that Brown was never "bereft of his ability to reason" and was able to fully comprehend the nature of the charges against him. Some of these remarks were elicited on direct examination while others were obtained on cross-examination.

The jury returned a verdict of guilty and judgment was entered accordingly. Brown was sentenced to thirty years imprisonment without the possibility of parole.

It is undisputed that Brown was given *Miranda* warnings at the time of his arrest but was never informed that statements made to the doctors and staff of the sanity commission could be used against him. Thus, Brown filed this habeas petition arguing that the rebuttal testimony of Dr. Mann violated his Fifth Amendment right not to be compelled to be a witness against himself. The district court denied Brown's requested relief.

## II. The Constitutional Violation

■ The issue here is whether the State's use on rebuttal of a criminal defendant's non-Mirandized statements to a state psychiatrist violates the defendant's right against self-incrimination. The United States Supreme Court has twice confronted this issue. In *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the court held that a capital defendant's Fifth and Sixth Amendment rights were violated when a State psychiatrist testified that, based on statements made at a competency hearing ordered by the court *sua sponte,* the defendant was a severe sociopath whose condition could not be remedied. In *Buchanan v. Kentucky,* 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987), the court clarified the principles enunciated in *Estelle.*

In *Buchanan,* a defendant charged with murder requested a psychological examination to determine whether he should be hospitalized for psychiatric treatment. At trial, the defendant attempted to substantiate his defense of "extreme emotional disturbance" by having a social worker read excerpts from reports of his psychological examination. In response, the State had the social worker read from other psychological reports which reflected the defendant's composed, manipulative character. The Supreme Court rejected the contention that the State's use of incriminating psychological reports violated Buchanan's Fifth and Sixth Amendment rights. The court held that "if a defendant requests such an evaluation or presents psychological evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested." *Buchanan,* 107 S.Ct. at 2917–18.

Recently this court synthesized the pronouncements in *Estelle* and *Buchanan* into workable principles, standards, and relevant factors. In *Schneider v. Lynaugh,* 835 F.2d 570 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988), Schneider was charged with two counts of aggravated robbery for the holdup of two Dallas drugstores. In each incident, an armed man entered the store, pointed a gun at the employee, demanded narcotics, and fled without taking any drugs. Schneider's counsel moved for a psychiatric examination to determine whether Schneider was fit to stand trial. A psychiatrist subsequently determined that Schneider was sane and competent to

stand trial. Schneider was eventually convicted.

At the sentencing stage, Schneider presented three witnesses—a drug abuse counselor, an employee in the jail's rehabilitation program, and a jail chaplain—to demonstrate his sincere desire to overcome his drug addiction. Cross examination of these witnesses revealed that their opinions were based solely on what Schneider had told them. None of the witnesses conducted any type of psychological exam or background behavioral study. In response, the State called a psychiatrist who had previously examined Schneider. The psychiatrist testified that Schneider had a "sociopathic personality disorder," no feelings of guilt or remorse, and no prospect of rehabilitation. The jury returned a sentence of 75 years on each count.

Schneider sought habeas relief contending that the doctor's rebuttal testimony violated his Fifth Amendment right against self-incrimination. Finding the case more analogous to *Buchanan* than *Estelle*, this court denied relief. "In general," the court noted, "the defendant must introduce mental-status evidence that may fairly be characterized as expert before the prosecution may respond with the results of a psychiatric examination." *Schneider*, 835 F.2d at 576. We discern two factors which appear to have been instrumental in the court's conclusion that the testimony of Schneider's three witnesses constituted "mental-status evidence" sufficient to open the door to the State's rebuttal. First, Schneider's witnesses, although not formally qualified as expert, "offered more than simple lay or character testimony" in that "their backgrounds comported with the spirit of [the expert witness] rule." *Id.* at 576. Second, the issue—Schneider's sincerity in wanting to reform—"was less technical than the questions of competency or sanity to which psychological evidence is typically directed." *Id.* at 576–77. In light of the witnesses' experienced backgrounds in assessing drug user's propensity to reform and the fact that the issue at hand—the probability of reformation—could be determined without highly specialized knowledge, the *Schneider* court concluded that the defendant had "introduce[d] mental-status evidence that may fairly be characterized as expert."

By contrast, the factors supporting a finding of expert mental-status evidence in *Schneider* are not present in the case at bar. Of Brown's three witnesses, the two jailers' testimony can be readily dismissed as a source of expert mental-status evidence. Unlike the witnesses in *Schneider*, the jailers appear to have no more knowledge than lay witnesses on the highly technical and elusive subjects of psychology and psychiatry.

Although Dr. Musso, Brown's third witness, was qualified by the court as an expert in "medical matters," this alone does not resolve whether his testimony concerning Brown's seizures can be fairly characterized as expert "mental-status evidence."

Dr. Musso's actual testimony related solely to his treatment of Brown's seizures based on the jailers' lay description of Brown's symptoms. The witness did not attempt to suggest that the seizures reflected a psychotic condition. In fact, rather than comment directly on Brown's emotional state, Dr. Musso deferred to a report, which he had not seen, prepared by Dr. Mann's staff in Jackson. Musso's general testimony is not so technical as to warrant the State's use of overwhelmingly more specialized testimony from a psychiatrist. In summary, Dr. Musso's testimony cannot be fairly characterized as expert mental-status evidence. Thus, while Brown requested the psychological examination, because his defense did not open the door to the State's use of psychiatric testimony on rebuttal, we hold that such rebuttal evidence violated Brown's Fifth Amendment right against self-incrimination.

## III. The Harmless Error Doctrine

■ Although we have found that the State's introduction of psychiatric testimony constitutes a constitutional violation, it is well settled that not all such violations amount to reversible error. *Satterwhite v.*

*Texas,* 486 U.S. 249, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284 (1988); *see also Buchanan,* 107 S.Ct. at 2919 n. 21 (applying harmless error doctrine to Fifth and Sixth Amendment violations). The general rule is that "if the prosecution can prove beyond a reasonable doubt that a constitutional error did not contribute to the verdict, the error is harmless and the verdict may stand." *Satterwhite,* 108 S.Ct. at 1797, *quoting Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

Brown never seriously contested the fact that he committed the acts underlying the armed robbery charge. Instead, Brown's case rested solely on his assertion of insanity. Consequently, we view the harmless error inquiry as limited to deciding whether the prosecution proved beyond a reasonable doubt that the wrongful use of psychiatric testimony did not contribute to the jury's rejection of Brown's insanity defense. Under Louisiana law, "[e]vidence of mental defect or disorder exempts a defendant from criminal responsibility only when it has been established the defendant was incapable of distinguishing between right and wrong with respect to the conduct in question." *State v. Belgard,* 410 So.2d 720, 726 (La.1982). The defendant bears the burden of establishing his defense of insanity by a preponderance of the evidence. *State v. Nealy,* 450 So.2d 634, 639 (La.1984).

After reviewing the record in its entirety, we find that Brown failed to carry his burden of proof with respect to proving insanity. Even if we were to conclude that evidence of epileptic seizures reflects the existence of mental disease or disorder, the record is entirely devoid of any evidence to suggest that "because of" the seizures, Brown was unable to distinguish right from wrong at the time he committed the offense. While the State's wrongful use of psychiatric testimony may have inhibited Brown's ability to prove mental disease or disorder, Brown's failure to introduce *any* evidence to support a necessary element of the insanity defense—the inability to distinguish right from wrong—renders any conceivable error harmless. *See also Buchan-*

*an,* 107 S.Ct. at 2919 n. 21 (error relating to one of two prongs of an extreme emotional disturbance defense was harmless where petitioner failed to proffer any evidence relating to second prong).

For the foregoing reasons, the judgment is AFFIRMED.