Raymond G. RILES,
Petitioner-Appellant,

v.

O.L. McCOTTER, Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 86–2167.

United States Court of Appeals,
Fifth Circuit.

Sept. 10, 1986.

Will Gray, Simonton, Tex., for petitioner-appellant.

Paula C. Offenhauser, Leslie A. Benitez, Charles A. Palmer, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before RUBIN, JOHNSON and JONES, Circuit Judges.

EDITH HOLLAN JONES, Circuit Judge.

The petitioner, Raymond G. Riles, is scheduled to be executed on September 17, 1986 for a murder he committed in 1974. Having had his motions for a certificate of probable cause to appeal and stay of execution denied by the district court, Riles moves this Court for the same relief. Having heard oral argument on the motions, the Court finds that there has been no substantial showing by Riles of a denial of a federal right, and his motion for a certificate of probable cause is therefore DENIED.

## I. FACTS

On December 11, 1974, Riles robbed and shot thirty-one year-old John Thomas Henry.[1] Two days later, Henry died and Riles was charged with his murder. Riles was subsequently tried before a jury, convicted of capital murder, and sentenced to death. Upon appeal, the conviction was reversed and the case remanded for a new trial. *Riles v. State,* 557 S.W.2d 95, 99 (Tex.Crim. App.1977). The second trial also resulted in Riles's conviction for capital murder;

---

**1.** The facts leading up to and surrounding the murder are set out in *Riles v. State,* 557 S.W.2d 95, 96–97 (Tex.Crim.App.1977).

punishment again was death. Appeal of the second conviction, however, was not met with success. *Riles v. State*, 595 S.W.2d 858 (Tex.Crim.App.1980) (en banc). Thereafter, Riles sought indirect relief via a writ of habeas corpus in the state trial court and Texas Court of Criminal Appeals, but both applications were denied.

Having exhausted his state remedies, Riles applied for a writ of habeas corpus in the United States District Court for the Southern District of Texas, and its denial precipitates this appeal. In support of his current motions for a certificate of probable cause and a stay of execution, Riles asserts several grounds of error.

## II. CERTIFICATE OF PROBABLE CAUSE

 Before Riles can prosecute his appeal in this court, he must obtain a certificate of probable cause. Fed.R.App.P. 22(b). *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983). The district court has already denied Riles a certificate, and unless he is able to establish a "substantial showing of the denial of [a] federal right," we will also deny his motion for the certificate. *Barefoot*, 463 U.S. at 893, 103 S.Ct. at 3394 (quoting *Stewart v. Beto*, 454 F.2d 268, 270 n. 2 (5th Cir.1971), *cert. denied*, 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed.2d 126 (1972)). To make his showing, Riles "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" *Id.* at 893 n. 4, 103 S.Ct. at 3394–95 n. 4 (quoting *Gordon v. Willis*, 516 F.Supp. 911, 913 (N.D.Ga.1980) (emphasis in original)).

## III. EXCLUSION OF VENIRE-MEMBERS.

 Riles's first complaint concerns the state trial court's decision to exclude for cause two veniremembers·because of their views on capital punishment. The first veniremember excused by the court admitted that his deliberations would be influenced by a possible death sentence, and that given a choice, he would choose a sentence other than death.[2]

The other excluded veniremember, Ms. Simpson, unequivocally stated that she could not impose capital punishment for a murder that occurred during the course of an armed robbery. In fact, anything short of a brutal "butcher" of a victim would result in her answering the special verdicts in such a way so as to defeat a penalty of death.[3]

---

2. The colloquy between the court and veniremember, Mr. Nix, was as follows:

COURT: Let me ask it this way: Would the fact that you know that the death penalty is a possibility in the event of a finding of guilty of capital murder, would the fact that you now know that that is a possibility, would that affect your deliberation on any issue of fact throughout the case? Do you understand my question?

MR. NIX: I understand it, but it is not that easy to answer.

COURT: No, I know it is not easy. But it is just like this: On the one hand, you tell me that you have this religious scruple against the infliction of death as punishment for crime. So, what I am asking you is, if that is the case, would the fact that the death penalty is a possibility affect the way you would answer any question involved in this lawsuit, up to and including, let's say, on the guilt or innocence—might you find it murder instead of capital murder so you wouldn't be faced with the death penalty?

MR. NIX: I am afraid I would have to say it would influence my way of thinking.

COURT: And that is true regardless of the nature and character of the case? Regardless of how bad the case is?

MR. NIX: Yes, I think so. It would still be in my mind, that it, that it would be to me, I would think I am doing wrong if I commit the guy.

COURT: We accept your feelings. Nobody is arguing with you. The only reason I am asking it in so many different ways is I must be absolutely sure that under no circumstances could you participate in a death penalty. If you had the choice, you would choose something less than death?

MR. NIX: I think I would have to say yes.

3. The relevant voir dire of Ms. Simpson was:

COURT: If both of those questions are answered yes by the jury, that is a mandate to me to give him the death penalty. If either of those questions is answered no, this is a mandate to me to give him life in the penitentiary. Since

Riles contends that the standards for exclusion of prospective jurors announced in *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980) and *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) should be applied over those set out in *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). This argument is unpersuasive, because the Supreme Court in *Witt* merely clarified *Witherspoon* and reaffirmed *Adams* as the proper standard to use when considering the exclusion of a potential juror. *Wicker v. McCotter*, 783 F.2d 487, 493 (5th Cir.1986), *cert. denied*, — U.S. —, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986). There is no inconsistency among the tests. *Adams* prohibits a veniremember from being challenged for cause due to his views on the death penalty "unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Adams*, 448 U.S. at 45, 100 S.Ct. at 2526. Here, both veniremembers unequivocally stated that they could not perform their duties impartially in accordance with the court's instructions. Given these veniremembers' principles, they would have been unable to satisfactorily perform their duties as jurors.

Further support for this conclusion arises from the deference and presumption of correctness afforded to a state court's factfindings concerning exclusion of potential jurors. *Wainwright v. Witt*, 469 U.S. at 426-30, 105 S.Ct. at 853-55. Reviewing the two veniremembers' testimony and the state court's decision to exclude these individuals from the jury in this light, it is evident that Riles has failed to make a "substantial showing of the denial of [a] federal right" with respect to this particular issue.[4]

you have expressed your opposition to the death penalty as a punishment, I need to ask you this: If the State had proven beyond a reasonable doubt that each of these questions that I have just cited to you should be answered yes, could you and would you answer them yes, knowing that it would result in the death penalty?
A. No.
COURT: You would be more than likely to answer one of them no, so it would be life imprisonment as opposed to the death penalty; is that correct statement?
A. Yes, sir.
COURT: And this is, I assume, true regardless of the crime that might be involved? In other words, a bloody and brutal crime is involved, would your answer still be the same?
A. No, I think I could change my mind then.
COURT: All right. Then you are not opposed to the death penalty?
A. Well, it depends, then, I guess on the facts.
COURT: Nothing unusual about that. So, if the facts were sufficient in your mind, you could vote for the death penalty. If, having heard the facts, you felt it was a proper punishment for the crime, you could vote for the death penalty; is that correct or not?
A. I think it depends on the type of crime.
A. Yes, exactly what the defendant did.
COURT: Well, how about a murder committed during the course of a robbery? That is exactly what we are talking about.
A. If he cut her up or something of that nature.
COURT: You are talking about butchering here?
A. Yes, sir.

COURT: And are you saying that in a case of—let's put it where it is a him. All right you are saying that in a case of murder during the course of a robbery, that unless somebody is butchered up, you could not find the death penalty; is that what you are telling me?
A. Yes.
COURT: Regardless of any other facts?
A. Yes.
COURT: Let me ask it another way. Not that you know the death penalty is a possibility and that mandatory life or death is an absolute proposition in the event of a finding of guilty of capital murder, would that fact affect your deliberations on any issue of fact during the course of the trial?
A. I think it would.

4. The State argues in the alternative that this argument is foreclosed by the procedural default doctrine. Riles failed to object at trial or on direct appeal to the exclusion of either veniremember. Under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) this failure to timely object bars Riles from now complaining of the trial court's conduct. Because we have concluded that these veniremembers were properly excluded under *Adams* and *Witt* we need not analyze whether, in spite of Riles's procedural default, he is entitled to review under the *Sykes* cause and prejudice test. *Id.* at 90–91, 97 S.Ct. at 2508.

Nor do we need to determine whether Riles's pre-trial motion to prohibit exclusion of prospective jurors with death penalty scruples would satisfy the contemporaneous—objection

## IV. VOIR DIRE EXAMINATION OF THE JURY

Riles complains that the voir dire examination was conducted in such a manner that the State's burden of proof on the punishment issue was significantly reduced. Specifically, Riles alleges that the trial court stressed the proof needed to support the aggravating circumstances and disregarded the effect of possible mitigating evidence. By so doing, he contends, the court committed a number of the jurors in advance to return affirmative answers on the two punishment issues.

■ Because Riles failed to object to the state trial court's lengthy and comprehensive voir dire, and because Riles's counsel was given an opportunity to conduct his own examination of the jurors (thus allowing him to cure any prejudice created by the court), the district court, relying on *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), denied federal habeas review on this issue.

We agree with the district court's decision. In Texas, a party must voice his objection to the conduct he considers erroneous at the time it occurs. "Failure to object waives error, if any, that is presented." *E.g. Green v. State*, 682 S.W.2d 271, 275 (Tex.Crim.App.1984), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985). By failing to object timely during voir dire to the instructions or questions he deemed inappropriate, Riles is barred from federal habeas review on this issue "absent a showing of 'cause' and 'prejudice.'" *Sykes*, 433 U.S. at 87, 97 S.Ct. at 2506.

"[C]ause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, —— U.S. ——, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986). Other than Riles's claim of ineffective assistance of counsel, which is discussed in Section VII, *infra*, of this opinion, there is nothing in the record which would establish cause for the default. Riles does not even allege that any external factor hindered or prevented him from complying with the contemporaneous objection rule.

Application of the procedural default rule is particularly appropriate to an alleged error in voir dire because, if an error is then made, it may readily be corrected before a jury is empanelled. Moreover, no objection is made to the court's instructions to the jury in this regard, and the jury's oath requires them to return a verdict in accordance with those instructions, not the preliminary examination. If despite the procedural default bar to Riles's voir dire challenge, we reached the issue, we would find that the examination conducted by the state trial court did not deprive Riles of any constitutional right. As part of the voir dire examination, courts in Texas are required by statute to "propound to the entire panel of prospective jurors questions concerning the principles, as applicable to the case on trial, of reasonable doubt, burden of proof, return of indictment by grand jury, presumption of innocence, and opinion." Tex.Code Crim.Proc.Ann. art. 35.17, § 2 (Vernon Supp.1986). When reviewed as a whole, the record of the voir dire examination reveals the court's sincere attempts to comply with this statute; the court explained the standards involved in the case, the burdens of proof on the parties, and the insanity defense raised by Riles.

■ Instead of looking at the record as a whole, however, Riles focuses on the court's attempts to explain the two issues submitted during the penalty phase of trial.[5] With respect to these two issues, how-

---

rule. We note, however, that this issue has previously been considered and rejected by the Texas Court of Criminal Appeals. *Duff-Smith v. State*, 685 S.W.2d 26 (Tex.Crim.App.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 186, 88 L.Ed.2d 154 (1985).

5. These issues are:
 (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

ever, the court did nothing more than explain the standards and provide the jury with guidelines to use in their deliberations. Riles has demonstrated nothing which would indicate the court abused its discretion in its examination. *See Milton v. Procunier,* 744 F.2d 1091, 1096 (5th Cir. 1984), *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1984); *Weaver v. State,* 476 S.W.2d 326 (Tex.Crim.App.1972); *Cook v. State,* 398 S.W.2d 284 (Tex.Crim. App.1965), *cert. denied,* 384 U.S. 966, 86 S.Ct. 1599, 16 L.Ed.2d 678 (1966).[6]

Because Riles failed to raise his challenge to the court's voir dire examination in a timely manner, it is waived. Even had he not waived this argument, he has made no substantial showing of the denial of a federal right as a result of the state trial court's voir dire examination.

## V. INSTRUCTIONS ON MITIGATING CIRCUMSTANCES AND CONSTITUTIONALITY OF TEX.CODE CRIM. PROC.ANN. ART. 37.071

Riles unsuccessfully raised the insanity defense at trial. Riles now argues that even if the psychiatric evidence presented at trial was insufficient to convince the jury he was insane when he murdered Henry, it may have been sufficient to show he was mentally ill. Mental illness, according to Riles, is a mitigating factor which would have "diminished" his criminal responsibility in the penalty phase of the trial. Even though he did not request an instruction on this mitigating factor during the penalty phase, it is Riles's belief that the trial court erred by failing to bring it to the jury's attention.[7]

█ A defendant will be "barred from raising his claim about the absence of a mitigating circumstance instruction" if there is no request for such an instruction at trial or if a contemporaneous objection to the court's charge on this ground is not made. *O'Bryan v. Estelle,* 714 F.2d 365, 385 (5th Cir.1983), *cert. denied,* 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). *See also Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and Tex.Code Crim.Proc.Ann. arts. 36.14, 36.15 (Vernon Supp.1986). Under *Sykes,* Riles was required to establish "cause" for the procedural default, and he has not done this. *Id.* at 90–91, 97 S.Ct. at 2508.

Riles also asserts a constitutional challenge to Article 37.071, stating that, as applied to his case, it prevented the jury from considering his mental illness as a mitigating factor. In a case factually similar to this one, this Court has found article

---

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

Tex.Code Crim.Proc.Ann. art. 37.071(b)(1) & (2) (Vernon Supp.1986).

**6.** Riles selected a few excerpts from the entire voir dire examination to fortify his challenge. When these excerpts are viewed in context with the rest of the testimony, Riles's argument with respect to "prejudice" borders on frivolous. Riles distorts the "prejudicial" colloquy that supposedly passed between the court, prosecutor, and a juror. Riles's brief implies that one conversation in particular involved a juror when it in fact involved a conversation between the court, prosecutor, and Riles's attorney. Moreover, the particular conversation occurred because of a question posed by Riles's attorney to a veniremember who *was not even selected as a juror.* The conversation complained of involved the meaning of the term "deliberate" as used in the first special issue in the punishment stage of the trial. Contrary to Riles's version of the examination, the only statement made by

the court in front of the veniremember was that the "courts have spoken on this issue [the distinction between the meaning of the words "deliberate" and "intentional"]." Record at 2095–96. The remainder of the discussion was conducted outside the presence of the jury. Record at 2096.

**7.** Riles bases these "mitigating evidence" arguments on the Supreme Court's decisions in *Lockett v. Ohio,* 438 U.S. 586, 604–05, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978), *Green v. Georgia,* 442 U.S. 95, 96–97, 99 S.Ct. 2150, 2151–52, 60 L.Ed.2d 738 (1979), and *Eddings v. Oklahoma,* 455 U.S. 104, 113–14, 102 S.Ct. 869, 876–77, 71 L.Ed.2d 1 (1982). Reliance on these cases as support for his argument is misplaced, however, because all three of these cases dealt with situations or statutes that actually *prevented* proffered mitigating evidence from being considered by the fact finder. Riles was not prevented from submitting the mitigating evidence.

37.071 in compliance with the Eighth and Fourteenth Amendments. *Granviel v. Estelle,* 655 F.2d 673, 675 (5th Cir.1981), *cert. denied,* 455 U.S. 1003, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982). The Texas statute has previously withstood constitutional attack in the Supreme Court. *Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976). In fact, the Supreme Court held that "[b]y authorizing the defense to bring before the jury at the separate sentencing hearing whatever mitigating circumstances relating to the individual defendant can be adduced, Texas has ensured that the sentencing jury will have adequate guidance to enable it to perform its sentencing function." *Id.*

■ The trial court never *prevented* Riles from re-urging evidence of mental illness to mitigate the penalty. Indeed, the trial court instructed the jury that they could consider *all* evidence submitted during *both* phases of the trial when answering the penalty issues. Record at 140. Moreover, there is nothing in the record which indicates the jury failed or refused to consider any of the considerable evidence in the guilt phase record with respect to mental illness. Failure of the trial court to give a specific instruction on mental illness did not rise to a constitutional error.

## VI. PSYCHIATRIC TESTIMONY

To support his insanity defense, Riles offered expert testimony of several experts who diagnosed a history of psychosis and schizophrenia and purported to demonstrate that Riles was insane when he committed the murder in 1974. In rebuttal, the state's experts offered an "alternate diagnosis" for Riles's behavior—that he was a sociopath, one suffering from a personality disorder, not insanity.

Riles first argues that the rights guaranteed him under the Fifth and Sixth Amendments were abridged under the standards set forth in *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) because: (1) the state's medical experts interviewed him absent counsel; (2) he was not advised of his right to remain silent; and (3) he was not informed that the results of the interviews could be used against him.

■ The district court noted Riles's failure to object at trial to the state's expert testimony and disposed of this complaint by applying the procedural default doctrine. *Wainwright v. Sykes, supra.* It has been brought to our attention, however, that in some post-Smith cases, the Texas courts have waived the procedural default theory. *Ex Parte Chambers,* 688 S.W.2d 483, 484 (Tex.Crim.App.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 181, 88 L.Ed.2d 150 (1985). As will be discussed below, Riles's claim does not fit the *Smith* analysis. Moreover, Riles has not shown "cause" for this default which would overcome his procedural default. For these reasons, we approve the district court's decision to dispose of this claim under a procedural default theory.

[8, 9] In any event, this case is distinguishable from *Smith,* where the prosecution introduced harmful psychiatric evidence during the punishment phase of the trial and the defendant had no clue, because he had never raised a defense of insanity, that such evidence would be introduced. The damaging testimony was based on an unrequested court-ordered psychiatric interview of the defendant conducted without the benefit of *Miranda* [8] warnings. Because advance notice as to the purpose of the examination was not provided to the defendant's counsel, the Court in *Smith* held that the defendant was also denied assistance of counsel in making a decision of whether to submit to the examination. Here, the record reflects that Riles, represented by counsel, requested most (if not all) of the psychiatric examinations, the results of which he now finds objectionable. Moreover, unlike the defendant in *Smith,* Riles raised the insanity defense; the state, therefore, had every right to rebut that defense. By pursuing this avenue of defense, and by offering psychiatric evidence to support this de-

---

**8.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

fense, Riles opened the door to the state's evidence and waived his Fifth Amendment privilege against self-incrimination. *Vardas v. Estelle*, 715 F.2d 206, 208 (5th Cir. 1983), *cert. denied*, 465 U.S. 1104, 104 S.Ct. 1603, 80 L.Ed.2d 133 (1984). Neither was Riles's Sixth Amendment right to assistance of counsel abridged. Finally, a defendant has "no constitutional right to have his attorney present *during* the psychiatric examination." *Vardas*, 715 F.2d at 209 (citing *United States v. Cohen*, 530 F.2d 43, 48 (5th Cir.1976), *cert. denied*, 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976) (emphasis added)).

 Riles's second objection to the state's psychiatric evidence involves the state's expert testimony given during the guilt/innocence phase of the trial. The state's experts described the characteristics of a sociopath and one expert testified that "this man is an extremely dangerous person who is a threat to society." Riles maintains that this testimony contributed to the jury's finding in the *penalty phase* that he "would constitute a continuing threat to society.'" Tex.Code Crim.Proc. Ann. art. 37.071(b)(2) (Vernon Supp.1986). We observe however, that a state is free to offer an "alternative diagnosis" for a defendant's behavior when an insanity defense is raised. *Vardas*, 715 F.2d at 210. When offering this alternate diagnosis to explain a defendant's behavior, the state may demonstrate that the defendant's behavior conforms with the alternate diagnosis by offering a description of the disorder. *Id.*

## VII. ASSISTANCE OF COUNSEL

 Riles finally argues that he was denied effective assistance of counsel during all stages of his trial (including voir dire examination, the guilt/innocence phase, and the punishment phase) and on appeal. Specifically, Riles maintains his counsel was ineffective because his attorneys neglected to:

(1) Raise on direct appeal the trial court's improper exclusion of venire-

members. (See section III of this opinion, *supra*).

(2) Object to the trial court's improper and prejudicial voir dire examination during the examination and on appeal. (See section IV of this opinion, *supra*).

(3) Object to the introduction of the state's psychiatric evidence which was admitted in violation of *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). (See section VI of this opinion, *supra*).

All of these alleged omissions on the part of Riles's counsel involve procedural defaults either at trial or on appeal. As noted earlier in this opinion, habeas relief will be denied in a situation involving procedural default unless the defendant can demonstrate good cause for the default and actual resulting prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 90–91, 97 S.Ct. 2497, 2508, 53 L.Ed.2d 594 (1977). In *Murray v. Carrier*, —— U.S. ——, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the Supreme Court recently held that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Id.* at ——, 106 S.Ct. at 2645–46. If, however, a defendant's counsel is constitutionally ineffective, such *will* constitute cause for a procedural default. *Id.* As a result, we must determine whether the performance of Riles's attorneys was constitutionally defective.

The two-part constitutional standard governing effectiveness of counsel was announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* places on the defendant the burden of showing that counsel's performance was seriously deficient and such deficiency was so prejudicial as to deprive the defendant of a reliable result at trial.

Having found each of the contentions asserted by Riles to be meritless irrespective of the procedural default, we cannot, consistently therewith, find incompetence of Riles's attorneys.

Similarly we find no error in the district court's denying Riles an evidentiary hearing on his ineffective assistance of counsel claim. A hearing is not required if it "would not produce further evidence in support of specific, nonconclusory allegations." *Celestine v. Blackburn,* 750 F.2d 353, 358 (5th Cir.1984). Riles has not demonstrated how a hearing would have aided either the district court or this Court.

## VIII. CONCLUSION

We find no showing of a denial of a federal right which would entitle Riles to a certificate of probable cause to appeal; therefore, the petition for probable cause is DENIED. Accordingly, the motion for a stay of execution is DENIED, and this appeal is DISMISSED.

ALVIN B. RUBIN, Circuit Judge, concurring:

I concur in the opinion because, as a judge of an inferior court, I am bound by the decisions of the Supreme Court, and, as a judge of this court, I am bound by the law of this circuit. If I were free to do so, I would order an evidentiary hearing on the effectiveness of counsel. To me, a sufficient showing has been made that trial counsel did not provide this accused with the quality of defense essential to adequate representation in any serious felony case, and particularly in a capital case.

It is probably true that any error made by court-appointed counsel in the guilt-innocence phase of the trial was harmless in the sense that it does not appear likely to have affected the result. The briefs and argument of current counsel, however, together with the record, indicate that, if Riles' trial counsel had been able, the jury might not have imposed the death penalty.

Precedent requires me to agree that this is not enough to justify a certificate of probable cause. The Constitution, as interpreted by the courts, does not require that the accused, even in a capital case, be rep-

resented by able or effective counsel. It requires representation only by a lawyer who is not ineffective under the standard set by *Strickland v. Washington.*[1] Proof that the lawyer was ineffective requires proof not only that the lawyer bungled but also that his errors likely affected the result. Ineffectiveness is not measured against the standards set by good lawyers but by the average—"reasonableness under prevailing professional norms"—and "judicial scrutiny of counsel's performance must be highly differential."[2] Consequently, accused persons who are represented by "not-legally-ineffective" lawyers may be condemned to die when the same accused, if represented by *effective* counsel, would receive at least the clemency of a life sentence.

JOHNSON, Circuit Judge: I concur in the opinion and in the concurrence of Circuit Judge RUBIN as well.

---

1. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

2. Id. 466 U.S. at 688–89, 104 S.Ct. at 2065.