**Gary GRAHAM, Petitioner–Appellant,**

v.

**James LYNAUGH, Director, Texas Department of Corrections, Respondent–Appellee.**

**No. 88–2168.**

United States Court of Appeals, Fifth Circuit.

Aug. 31, 1988.

Douglas M. O'Brien, Houston, Tex., for petitioner-appellant.

Robert S. Walt, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before REAVLEY, KING and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Gary Graham, seven years after his conviction in the Texas state courts for capital murder, is before us for the first time and petitions this court for a certificate of probable cause, seeking a stay of his execution and habeas relief under 28 U.S.C. § 2254. We granted a temporary stay of his execution, received briefs, and heard argument so that we could consider his petition more closely. After a thorough review, we are convinced that Graham's contentions are meritless and that he has failed to make any showing of the denial of a federal right. We therefore deny Graham's petition for certificate of probable cause. Nevertheless, in order that the Supreme Court may have an opportunity to consider this case, the temporary stay will not be lifted until 12:01 a.m., September 30, 1988.[1]

I

This habeas corpus petition arises from Graham's conviction in 1981 in Texas state court for the felony offense of capital murder. Graham, who was seventeen at the time of the crime, was represented by two attorneys who developed a defense around mistaken identity. Counsel advised Graham against testifying, and he followed this advice. No alibi witnesses were called, and only two mitigation witnesses testified during the sentencing phase. Graham was found guilty and sentenced to death.

Graham appealed his conviction to the Texas Court of Criminal Appeals. He argued that the trial court improperly excluded five prospective jurors and denied a limiting instruction regarding extraneous offenses. On June 12, 1984, in an unpublished per curiam opinion, the court of criminal appeals affirmed the conviction. It was not until June 26, 1987, however, that the trial court set the execution date. Execution was set for July 30, 1987.

Graham then began these efforts for postconviction relief when he petitioned the Texas state district court. Because the petition was not filed until July 13, 1987, less than three weeks before the scheduled date, execution was postponed to allow time for judicial review. After the district court conducted an evidentiary hearing on January 8, 1988, the court entered findings of fact and conclusions of law recommending denial of relief. The Texas Court of

1. Cases are pending that may have related issues. *See* notes 2 and 8 *infra.*

Criminal Appeals then denied relief on February 19, 1988. Graham's execution was then rescheduled for February 25.

Graham filed this petition for a writ of habeas corpus and stay of execution in federal district court on February 23, 1988. The district court found that all relevant facts had been developed by the state court and adopted the state court's factual findings. *See Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). After reviewing Graham's legal contentions, the district court, on the eve of Graham's scheduled execution, determined that his claims were meritless, denied relief and denied a certificate of probable cause.

Graham immediately appealed and asked this court to grant his petition for a certificate of probable cause. We issued an order temporarily staying Graham's execution so that we might have more time to examine his request. *See, e.g., Henry v. Wainwright,* 743 F.2d 761, 762 (11th Cir. 1984). After submission of briefs and oral argument, we now address the questions before us.

## II

▇ The standard for granting a certificate of probable cause "requires petitioner to make a 'substantial showing of the denial of [a] federal right.'" *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983) (quoting *Stewart v. Beto,* 454 F.2d 268, 270, n. 2 (5th Cir.1971), *cert. denied,* 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed.2d 126 (1972)). In the light of this test, we turn to the issues before us.

### A.

▇ First, Graham asserts that his death sentence violates the eighth amendment because he was seventeen at the time of the offense. Graham contends that, despite Texas state court and Fifth Circuit precedent to the contrary, this issue is meritorious because recently the Supreme Court has called into serious question the application of the death penalty to teenagers. *Thompson v. Oklahoma,* —— U.S. ——,

108 S.Ct. 2687, 101 L.Ed.2d 702 (1988) (plurality opinion). Upon reviewing the *Thompson* decision, we find that it offers Graham no help. In a plurality opinion, Justice Stevens concluded that the eighth amendment prohibits the execution of an individual who is under sixteen years of age at the time the crime was committed. *Id.* at ——, 108 S.Ct. at 2700. Justice Stevens based the decision upon what he considered to be the current "evolving standards of decency." *Id.* at ——, 108 S.Ct. at 2691. The opinion examined the capital punishment policies of all the states and found a consensus that imposition of capital punishment upon someone who is under sixteen years of age is "now generally abhorrent to the conscience of the community." *Id.* at ——, 108 S.Ct. at 2697.

Justice O'Connor, although concurring in the judgment, declined to find expressly that a national consensus existed that prohibited the execution of anyone under the age of sixteen. *Id.* at ——, 108 S.Ct. at 2704–05. Hence she concluded only that "petitioner and others who were below the age of sixteen at the time of their offense may not be executed under the authority of a capital punishment statute that specifies no minimum age at which the commission of a capital crime can lead to the offender's execution." *Id.* at ——, 108 S.Ct. at 2711.

Neither Justice Stevens' nor Justice O'Connor's opinion bears any suggestion that an individual of Graham's age cannot be sentenced to death. The evidence relied on in *Thompson* simply reflected a likely consensus among the states that execution of an individual *under the age of sixteen* was cruel and unusual punishment. Neither the holding nor the rationale of *Thompson* supports an argument that the eighth amendment bars the death penalty against persons who are sixteen or older. *See* —— U.S. at ——–——, 108 S.Ct. at 2691–96. Thus, *Thompson* does not aid Graham.

Graham fairs no better under Fifth Circuit precedent. This court has specifically observed that "[n]o court has ruled that in all cases and under all circumstances, the

execution of those who commit capital offenses while under the age of eighteen constitutes cruel and unusual punishment." *Prejean v. Blackburn*, 743 F.2d 1091, 1098 (5th Cir.1984). Texas state law has similarly held that the capital sentencing of an individual who is less than eighteen years old is not unconstitutional. *Cannon v. State*, 691 S.W.2d 664, 678 (Tex.Crim.App. 1985), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Ferguson v. State*, 573 S.W.2d 516, 525 (Tex.Crim.App. 1978), *cert. denied*, 442 U.S. 934, 99 S.Ct. 2870, 61 L.Ed.2d 304 (1979). There are no special circumstances in Graham's case that indicate that he should be treated any differently from any other seventeen-year-old person who commits the crime of capital murder. We therefore must conclude that Graham's first contention has no constitutional basis.[2]

### B.

■ Graham challenges the Texas death penalty statute, Tex. Code Crim.Proc.Ann. art. 37.01 (Vernon 1981 & Supp.1987), under the fifth, sixth, eighth and fourteenth amendments of the United States Constitution and corresponding Texas provisions. He objects to the statutory sentencing procedure that determines punishment by allowing the jury only to answer specific questions.[3] Tex.Crim.Pro.Code Ann. art. 37.071(b) (Vernon 1981 & Supp.1987). Under the Texas scheme, only two special issues were submitted to the jury: (1) whether the crime was committed deliber-

ately, and (2) whether the defendant is likely to pose a future danger to society. Graham alleges that these questions do not permit the jury to weigh mitigating circumstances when formulating their answers.[4]

Graham's attack upon the Texas statutory sentencing scheme raises issues that are similar to those contained in *Franklin v. Lynaugh*, which, at the time we granted a temporary stay, was pending before the Supreme Court, 823 F.2d 98 (5th Cir.), *cert. granted*, —— U.S. ——, 108 S.Ct. 221, 98 L.Ed.2d 180 (1987). The Court granted certiorari on the issue of "[w]hether the jury must be instructed on the effect of mitigating evidence under the Texas capital punishment scheme." The *Franklin* petitioner had requested five jury instructions that would have informed the jury that they should consider all mitigating evidence in answering the Texas statutory questions. —— U.S. ——, ——, ——, 108 S.Ct. 2320, 2324, 2325, 101 L.Ed.2d 155 ((1988). The requested instructions further stated that the jury could answer the statutory questions in the negative if they found any evidence mitigating against the death penalty. —— U.S. at ——, ——, 108 S.Ct. at 2324, 2325. The trial court refused these special jury instructions and Franklin asserted that because the Texas sentencing scheme did not allow the jury to consider the full range of the mitigating evidence, his eighth amendment rights were violated. *Id.*[5]

On June 22, 1988, the court issued its plurality opinion upholding the Texas statute. *Franklin v. Lynaugh*, —— U.S. ——,

---

**2.** We are cognizant of the Supreme Court's grant of certiorari in *High v. Kemp*, 819 F.2d 988 (11th Cir.1987), *cert. granted*, —— U.S. ——, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988). *High* deals specifically with the imposition of the death penalty on a seventeen-year-old defendant. This panel, however, is bound by Fifth Circuit precedent which holds that the execution of a defendant who was aged seventeen when the crime was committed does not constitute cruel and unusual punishment. *See Prejean v. Blackburn*, 743 F.2d 1091, 1098 (5th Cir.1984).

**3.** He further contends that the statute does not define "mitigating circumstances" and that the trial court failed to instruct the jury on the proper treatment of mitigating circumstances. These contentions are meritless in the light of

Supreme Court and Fifth Circuit decisions upholding the constitutionality of the Texas sentencing scheme. *See e.g. Franklin v. Lynaugh*, —— U.S. ——, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) (plurality opinion); *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Riles v. McCotter*, 799 F.2d 947, 952–53 (5th Cir.1986).

**4.** These mitigating factors introduced at the sentencing phase, included Graham's youth and his difficult childhood.

**5.** The issue of whether the jury can consider "residual doubt" as a mitigating factor was also before the Court in *Franklin*. —— U.S. ——, 108 S.Ct. 2320. Graham, however, does not raise this issue and we do not address it.

108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) (plurality opinion). Writing for the plurality, Justice White concluded that the trial court did not violate the eighth amendment by refusing to grant Franklin's requested instructions. —— U.S. at ——, 108 S.Ct. at 2331–32. He based this holding on the conclusion that the Texas statutory questions did not prevent the *Franklin* jury from considering mitigating evidence. He stated: "It is the established Texas practice to permit jury consideration of ' "whatever mitigating circumstances" the defendant might be able to show' in capital sentencing...." *Id.* at ——, 108 S.Ct. at 2326. He further noted that Franklin was allowed to present, and the jury allowed to consider, the only mitigating evidence offered, i.e., his good prison disciplinary record. *Id.* at ——, 108 S.Ct. at 2328. Indeed, this particular mitigating circumstance could be considered specifically in response to the Special Issues before the jury because it related to the statutory question of future dangerousness. *Id.* In short, the plurality opinion expressly reaffirmed *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), and thus appears to uphold the Texas statute against any argument that it limits consideration of relevant mitigating evidence.[6] *Id.* —— U.S. at ——, 108 S.Ct. at 2331.

Justice O'Connor, although concurring in the judgment of the court, wrote separately, joined by Justice Blackmun. Justice O'Connor's opinion took exception to Justice White's suggestion that a state may limit the sentencing authority's ability to consider mitigating evidence. *Id.* at ——, 108 S.Ct. at 2332. She noted that the Court in *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978) (plurality opinion), held that the state could not prevent the jury "from giving independent mitigating weight to aspects of the defendant's character and record and to circumstances of the offense proffered in mitigation." She emphasized her view that a jury's sentencing decision "should reflect a reasoned *moral* response to the defendant's background, character, and crime,"

*id.* —— U.S. at ——, 108 S.Ct. at 2333 (quoting *California v. Brown,* 479 U.S. 538, 545, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987) (O'Connor, Jr., concurring) (emphasis in original)), and concluded that a state cannot prevent the jury from considering the full scope of relevant evidence that might mitigate the defendant's culpability for the crime. Justice O'Connor reconciled her broader view with the judgment in *Franklin* by noting that the only mitigating evidence introduced by Franklin was that he had a good prison disciplinary record. Since the jury could consider this mitigating evidence in answering the Special Interrogatory concerning future dangerousness, Justice O'Connor upheld the Texas sentencing scheme as it applied to Franklin. *Id.*

In relating *Franklin* to the instant case, we first note that the plurality opinion, and thus the judgment of the Court, clearly upheld the Texas sentencing scheme. Second, we observe, however, that the evidence relative to mitigation in this case is more similar to *Penry v. Lynaugh,* 832 F.2d 915 (5th Cir.1987), *cert. granted,* —— U.S. ——, 108 S.Ct. 2896, 101 L.Ed.2d 930(1988), than to *Franklin.* There were two mitigating points made to the jury here: (1) Graham was seventeen-years old at the time the crime was committed and (2) he had a difficult family life. Thus, the concerns about the Texas sentencing scheme expressed by Justice O'Connor, that the jury may be prevented from considering the full range of the mitigating evidence as it relates to the defendant's moral culpability, could be directly at issue in this case.

We hold, nevertheless, that the jury's verdict in *Graham* is consistent with the constitutional requirements outlined in *Franklin* and other precedents. Indeed, we are convinced that the plurality opinion in *Franklin* only strengthens past circuit and Supreme Court decisions that indicate that Graham cannot prevail upon his eighth amendment challenge. For instance, *Franklin* reaffirmed *Jurek v. Texas,* 428

---

**6.** We do note, however, that the conlusion of the opinion might be interpreted to limit its holding to the facts in Franklin's case. *See Franklin,* —— U.S. at ——, 108 S.Ct. at 2325.

U.S. 262, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976), which expressly held the Texas death penalty statute constitutional. *Franklin,* —— U.S. at ——, ——, 108 S.Ct. at 2325, 2328. The plurality opinion cited with approval *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), which noted that the Texas statute does allow the jury fully to consider relevant mitigating circumstances.[7] Following these guidelines, this circuit, upon numerous occasions, has concluded that the Texas statute does allow consideration of mitigating evidence, and that the statute is constitutional. *Selvage v. Lynaugh,* 842 F.2d 89, 94 (5th Cir.1988); *Williams v. Lynaugh,* 837 F.2d 1294 (5th Cir.1988), *cert. granted,* —— U.S. ——, 108 S.Ct. 1000, 98 L.Ed.2d 967 (1988); *Riles v. McCotter,* 799 F.2d 947, 952–53 (5th Cir.1986).[8] We conclude, therefore, that Graham's arguments on these grounds are meritless.[9]

### C.

■ Graham next argues that even if the Texas statute is constitutional, his trial attorney was rendered ineffective because the attorney construed the statute as precluding the consideration of mitigating factors. As indicated by the affidavit of Graham's trial attorney, the attorney was not in any way discouraged by the statute from presenting mitigating evidence of Graham's psychiatric treatment; rather, his decision not to pursue this course resulted from his belief that little convincing evidence existed and that damaging rebut-

tal evidence would be introduced.[10] The attorney's concern was justified because, as the Supreme Court has noted in *Buchanan v. Kentucky,* —— U.S. ——, 107 S.Ct. 2906, 2917–18, 97 L.Ed.2d 336 (1987), "if a defendant ... presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant released." Finally, during the sentencing phase, Graham's attorney did obtain mitigating testimony from Graham's stepfather and grandmother concerning his childhood. The evidence reflects no other witnesses who could or would present relevant evidence on Graham's behalf. Graham's present contention that his trial attorney was ineffective because he introduced little mitigating evidence is therefore meritless.

### D.

■ In Graham's fourth contention, he alleges that he is not presently competent to be executed. Graham relies on post-trial reports filed by psychiatrists Dorothy Lewis and Johnathan Pincus and contends that there is evidence of considerable organic impairment, moderate retardation, and psychotic symptoms.

The state court, in examining these contentions, noted that Graham was examined by two psychiatrists at the time of trial and was adjudged competent to stand trial. In reaching its decision that Graham was com-

---

7. Graham also contends that the jury should be informed of the effect of their answers to the sentencing questions. The state court found that the jury *did* advise the jurors of the consequences of their answers and the record supports this finding.

8. We do not suggest that this area of the law is devoid of wrinkles. The Supreme Court has recently granted certiorari in the case of *Penry v. Lynaugh,* 832 F.2d 915 (5th Cir.1987), *cert. granted,* —— U.S. ——, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988). In *Penry,* our court closely scrutinized evidence of Penry's mental retardation and concluded that there was some doubt whether the Texas statute permitted this evidence to be considered in answering the sentencing questions. 832 F.2d at 925.

9. Graham also argues that the Texas statute is unconstitutional because testimony concerning unadjudicated extraneous offenses was allowed during the punishment phase of the trial. In *Williams v. Lynaugh,* 814 F.2d 205 (5th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987), this court rejected a similar argument and concluded that "admission of unadjudicated offenses in the sentencing phase of a capital trial does not violate the eighth and fourteenth amendments." 814 F.2d at 208. We stand by this decision.

10. Graham's attorney believed that the prosecution's witnesses would testify that Graham was "faking" his mental problems, that he was manipulative of others, and that he had told them it was "O.K. to rob people."

petent both at trial and presently, the state district court stated that it

carefully considered (1) all the psychiatric material submitted by both the applicant and the respondent, and (2) the applicant's demeanor and abilities as he testified at the evidentiary hearing held January 8, 1988. While the reports from Dr. Dorothy Otnow Lewis and Dr. Jonathan H. Pincus suggest that the applicant is mildly brain damaged, of low intelligence, and has experienced 'bipolar mood disorders,' there is nothing in the reports or evidence from any other source to indicate that the applicant is either insane or that he does not know the fact of his impending execution and the reason for it.

Moreover, the state court found that Graham was examined by Dr. Jerome Brown in January 1987 and found competent to participate in the habeas evidentiary hearing and assist his attorney. Thus the state court held that there was "no credible evidence from any source to indicate that the applicant is not competent to be executed." Under *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981), the state court's findings must be given a presumption of correctness unless one of the conditions provided in section 2254(d) is established. *See also Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). The most relevant consideration listed in section 2254(d) is whether the trial court's factual findings are "fairly supported by the record." Clearly, there is competent evidence supporting the state court's finding that Graham is competent to be executed; indeed, the petitioner cannot seriously argue that there is not. We therefore hold that Graham's contention is meritless.

### E.

 Graham's fifth contention is that he was denied his right to effective assistance of counsel in violation of his fourth, sixth and fourteenth amendment rights. Graham's particularized grounds are that his counsel:

(1) failed to conduct an adequate pretrial investigation,

(2) failed to interview all the witnesses,

(3) failed to obtain a third psychological-psychiatric examination,

(4) failed to conduct an adequate cross-examination of the state's key witness,

(5) failed to bring forth proper alibi witnesses,

(6) failed to request a limiting instruction concerning extraneous offenses,

(7) failed to develop a proper trial strategy,

(8) failed to provide proper clothing for the petitioner during trial,

(9) failed to call more than two witnesses during the punishment phase of Graham's trial,

(10) failed properly to investigate the alleged extraneous offenses admitted into evidence against Graham,

(11) failed to order an independent psychiatric examination of Graham, and

(12) failed to allow Graham to testify at the guilt/innocence phase or the punishment phase of the trial.

The affidavit submitted by Graham's original defense counsel has a particular bearing on these assertions. The state court credited Graham's trial counsel and determined that Graham's counsel had conducted himself in a competent manner. For example, the state court's factual findings show that Graham's counsel met with Graham on numerous occasions to discuss the case with him. Graham stated only that he did not commit the crime and did not inform his attorney of any witnesses who would support his contention or explain where Graham had been at the time the crime occurred. The state court specifically determined that the alibi witnesses upon whom Graham now relies were never available to Graham's trial attorney. Moreover, the court found that three of the four alleged alibi witnesses did not offer credible testimony.[11] The defense counsel

---

11. The witnesses submitted a written affidavit

over five years after Graham's conviction for

also hired an investigator to interview possible witnesses, and filed a motion for sanity and competency evaluation. It was further found that counsel had valid reasons for failing to request a third independent psychiatric evaluation of Graham.[12] Counsel also used his personal funds to buy Graham suitable clothing for the trial. Counsel further attempted to obtain numerous mitigation witnesses, but only two would agree to testify favorably for Graham. Credited testimony showed that counsel advised Graham that he had the right to testify but counsel's legal view was that Graham would not present himself as a sympathetic witness. Furthermore, the state court determined that the counsel's cross-examination of the state's key witness was not affected by the fact that counsel had attended the same high school. Finally, the court found that the defense counsel had good cause for not objecting to the state's challenge of certain veniremen, and that counsel made a reasonable investigation of certain extraneous evidence admitted during the punishment phase of the trial. In short, the state court found against Graham on every issue of fact upon which he predicated his ineffective counsel claim and concluded that counsel had competently and effectively represented Graham.

Having reviewed the record and the state court's findings of fact, we must conclude that Graham has failed to overcome the presumption that the state court's findings were correct. *See Sumner v. Mata,* 101 S.Ct. at 771. Graham has failed to present a meritorious challenge on this issue.

### F.

■ In Graham's sixth point of error, he makes a broadside attack on the Texas death penalty statute, alleging that it violates the fourth, fifth, sixth, eighth and fourteenth amendments to the Constitution. In particular, Graham maintains that the Texas capital punishment system pro-

duces arbitrary results and does not provide proportionality. This contention lacks merit in view of the Supreme Court's holdings in *Franklin v. Lynaugh,* —— U.S. ——, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) and *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). In *Franklin,* although the issue of proportionality was not directly before the Court, Justice White did note that the Texas capital sentencing scheme properly structured jury discretion. —— U.S. at ——, 108 S.Ct. at 2331. The Court more directly addressed this issue in *Jurek* when it stated:

Texas has ensured that the sentencing jury will have adequate guidance to enable it to perform its sentencing function. By providing prompt judicial review of the jury's decision in a court with statewide jurisdiction, Texas has provided a means to promote the even-handed, rational, and consistent imposition of death sentences under law. Because this system serves to assure that sentences of death will not be "wantonly" or "freakishly" imposed, it does not violate the Constitution.

96 S.Ct. at 2958. *See also McCleskey v. Kemp,* 481 U.S. 279, 107 S.Ct. 1756, 1774, 95 L.Ed.2d 262 (1987); *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 879, 79 L.Ed.2d 29 (1984). We therefore reject Graham's contentions.

### G.

■ Graham also asserts for the first time that his due process and equal protection rights were violated because individuals under eighteen-years old were statutorily excluded from the grand and petit jury and, in addition, blacks were substantially and systematically excluded. The state court specifically found that the peremptory challenges against blacks resulted from the veniremen's testimony that they were opposed to the death penalty. Since the state court has reviewed the record and concluded that Graham has failed to build a

---

capital murder. One witness testified that the affidavit was prepared by a third party and the witnesses only signed the statement.

**12.** Graham's prior psychiatric evaluations were consistent and showed that Graham was competent to stand trial. This comported with defense counsel's own view of his client's competency.

prima facie case of discrimination in either the grand or petit jury selection, we must concur with the state court's decision. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 1722, 90 L.Ed.2d 69 (1986); *see also Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981); *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); *United States v. Cronn,* 717 F.2d 164, 168 n. 7 (5th Cir. 1983), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3586, 82 L.Ed.2d 884 (1984).

Finally, we know of no case law which suggests that exclusion of eighteen-year-olds is unconstitutional, and Graham has failed to show how such an exclusion has denied him a fair jury trial. *See Carter v. Jury Commission,* 396 U.S. 320, 90 S.Ct. 518, 525, 24 L.Ed.2d 549 (1970).[13]

## III

In conclusion, the petitioner has not made a substantial showing of a denial of a federal right and we therefore must deny his petition for a certificate of probable cause.

However, because the Supreme Court has granted certiorari in *High v. Kemp,* 819 F.2d 988 (11th Cir.1987), *cert. granted,* — U.S. ——, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988), and *Penry v. Lynaugh,* 832 F.2d 915 (5th Cir.1987), *cert. granted,* — U.S. ——, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988), we will continue our stay until 12:01 a.m., September 30, 1988, in order to give Graham an opportunity to petition the Supreme Court for certiorari; and, if a petition is filed, this stay shall continue in effect until such time as the Supreme Court has acted.

PETITION FOR CERTIFICATE OF PROBABLE CAUSE DENIED.

---

13. As a last point of contention, Graham objects to the federal district court's summary dismissal of his claim. He argues that the district court conducted an ex parte investigation without giving him the opportunity to file an answer. Finally, Graham alleges that the district court did not provide him an opportunity to inspect and review all documents that it considered. He contends that these omissions violated 28 U.S.C. § 2254, Rules 4 and 5. These assertions are hollow. Rules 4 and 5 do not bind the district courts in such a manner. In any event, Graham has not shown any prejudice arising from these alleged deprivations.